SEAFARE CORPORATION v. TRENOR CORPORATION, FRED J. BENDER AND WIFE, JUDY H. BENDER

No. 871SC398

(Filed 19 January 1988)

1. **Pleadings § 1— extension of time to file complaint—expired on Sunday—filing on Monday proper**

    A complaint was timely filed on 17 September 1984 even though an order extending the time to file the complaint expired on 16 September when 16 September fell on a Sunday.

2. **Rules of Civil Procedure § 12.1— improper service of process—not properly raised—waived**

    Although defendants may have been correct in arguing that service of process on one defendant by leaving a copy of the complaint with his wife at his office was defective, their failure to raise the defense in the manner provided by N.C.G.S., § 1A-1, Rule 12(h)(1) waived the defense.

3. **Appeal and Error § 32; Fiduciaries § 2— existence of fiduciary relationship— failure to object to submission of issue**

    If a party does not object to the submission of issues at trial, he cannot make the objection on appeal; however, even if defendants had objected at trial, the court nevertheless did not err in submitting an issue as to whether a fiduciary relationship existed between plaintiff and one defendant where plaintiff's evidence tended to show that plaintiff hoped the defendant would sell its property for a good price, thus enabling plaintiff to pay its debts, but defendant contended that plaintiff's evidence showed that plaintiff's property was transferred to defendant in order to deceive plaintiff's creditors.

4. **Fraud § 13— existence of fiduciary relationship—transfer of property to fiduciary—presumption of fraud—instructions proper**

    The trial judge properly instructed the jury that once plaintiff had shown the existence of a confidential relationship between itself and one defendant and a transfer of plaintiff's property from the fiduciary to another, fraud was presumed, and plaintiff was not required to present direct evidence of fraud.

**Seafare Corp. v. Trenor Corp.**

**5. Appeal and Error § 16— notice of appeal filed—no jurisdiction of trial court to grant new trial**

The trial court correctly held that it had no jurisdiction to grant a new trial when notices of appeal were filed the same day, and there was no merit to defendants' argument that the trial court retained jurisdiction because they had filed motions for stay of proceedings one minute before filing their notices of appeal, since the motions to stay proceedings were made for the purpose of staying execution of the judgment pending disposition of the motions for new trial.

**6. Trial § 3— no knowledge of settlement by codefendants—failure to obtain counsel—continuance properly denied**

. The trial court did not err in denying defendants' request for a continuance, though defendants were unaware of previous settlements by and dismissals of the other original codefendants and though they had been relying on their codefendants' attorneys to represent their interests, since defendants were notified of their trial date four and one-half months in advance but made no effort to obtain representation.

**7. Trial § 12— absence of defendant from trial—no inquiry required by trial court**

The trial court did not err in not inquiring as to the whereabouts of one defendant and in entering judgment against her in her absence.

**8. Trial § 7— no pretrial conference or order—defendants not prejudiced**

The trial court did not err in calling the matter to trial without a pretrial conference or the filing of a pretrial order where the record showed that the trial court ordered that a pretrial order be tendered to the court; defendants offered no explanation as to why no pretrial order was submitted; and a pretrial conference was within the trial judge's discretion. N.C.G.S. § 1A-1, Rule 16.

**9. Evidence § 33; Fraud § 11— conspiracy to defraud plaintiff of property—out-of-court declarations not hearsay**

Where plaintiff contended that defendants conspired to defraud it and that they engaged in unfair and deceptive trade practices, out-of-court declarations offered to prove that plaintiff's restaurant property was deeded to one defendant in trust for plaintiff and that defendant who purchased it had knowledge of that fact would not be hearsay.

**10. Attorneys at Law § 4; Evidence § 13— paralegal's testimony not inadmissible**

The trial court did not err in allowing a paralegal employed by plaintiff's counsel to be called as a witness, since Rule 5.2 of the N.C. Rules of Professional Conduct applies only to lawyers, not their employees; and, even if the rule did apply to paralegals, it would not apply in this case because the witness primarily testified for the purpose of authenticating documents and explaining certain basic aspects of real estate transactions which a lawyer would have been allowed to do pursuant to the cited rule.

**11. Trial § 11.1— jury argument—reading from treatise—no error**

Where plaintiff alleged that its property was deeded to one defendant in trust and that all defendants conspired to defraud it of its property, the trial court did not err in allowing plaintiff's counsel, during closing argument, to read a passage from a treatise on trusts which stated a general principle of trust law which has been applied by the North Carolina courts.

**12. Damages § 10— consideration for dismissals against codefendants—failure to disclose amount—no request for information by defendants**

Defendants could not complain that the trial court erred in not requiring plaintiff to disclose all the consideration received in exchange for voluntary dismissals as to other codefendants, since defendants did not present any evidence of consideration or make any motion to require disclosure of consideration received by plaintiff.

**13. Damages § 10— plaintiff's damages reduced by amount of settlements with codefendants—no application of Uniform Contribution among Tort-Feasors Act**

Where plaintiff alleged that defendants conspired to defraud it of its property and that they engaged in unfair and deceptive trade practices, defendants' right to have plaintiff's damages reduced by the amount of any settlements with codefendants was not conditioned on the application of the Uniform Contribution among Tort-Feasors Act; rather, defendants' credit was based on the principle that plaintiff could have only one recovery for its injury, and the trial court properly credited defendants with the right amount.

**14. Damages § 10; Unfair Competition § 1— plaintiff's damages reduced by amount of settlements with codefendants—reduction before trebling damages—error**

The trial court erred in reducing plaintiff's damages by the amount of settlements with original codefendants *before* trebling the jury's award of damages rather than after, since two purposes of the statutory provision for treble damages are to facilitate bringing actions where money damages are limited and to increase the incentive for reaching a settlement, and these purposes would be thwarted by deducting settlements before trebling damages. N.C.G.S. § 75-16.

APPEAL by defendants from *Small, Judge.* Judgment entered 6 November 1986 in Superior Court, DARE County. Heard in the Court of Appeals 27 October 1987.

In this action plaintiff alleged that defendants Fred J. and Judy H. Bender and Trenor Corporation had conspired with defendant William Stafford to defraud plaintiff; that defendants had engaged in unfair and deceptive trade practices in violation of G.S. 75-1.1; and that plaintiff was entitled to treble damages pursuant to G.S. 75-16. Eleven parties were originally named as defendants; but during the course of the litigation, plaintiff took voluntary dismissals as to all defendants except defendants Bender and Trenor.

Plaintiff Seafare Corporation owned and operated the Seafare Restaurant, a large seafood restaurant located in Nags Head, North Carolina. Michael Hayman was president and principal owner of Seafare Corporation, and personally managed the restaurant. At trial plaintiff's evidence tended to show the following:

In 1982 plaintiff's restaurant business began to experience financial difficulties, and plaintiff sought to refinance its debt structure. Through a mortgage broker named William Stafford, Hayman obtained two loans totalling $300,000 from Central Fidelity Bank in Virginia Beach, Virginia. The loans were secured by deeds of trust on the restaurant property. Business continued to decline, and plaintiff closed the restaurant in January 1983. In addition to the corporate debts, Hayman was having trouble with his personal finances as well.

At about this time Stafford informed Hayman that the bank was going to foreclose on the restaurant. Hayman had received a letter from the bank requesting that he keep his accounts current, but no foreclosure proceedings had been instituted. Hayman nevertheless accepted Stafford's information without checking with the bank. Hayman and Stafford developed a plan whereby the restaurant property would be transferred to Stafford, who would then either sell or manage the property for the benefit of plaintiff. The purpose of the plan was to prevent foreclosure because Stafford was well-known at the bank, and also to prevent the filing of additional liens against the property.

In February 1983 a meeting was held at the office of Mark Spence, an attorney in Nags Head who knew both Hayman and Stafford. At this meeting, Hayman executed a deed conveying the restaurant property and another tract of land to Stafford and his wife, Vanessa Stafford. The second tract of land was owned by My Lady Rachel, Inc., another corporation controlled by Michael Hayman. Hayman and Mark Spence both testified that defendant Fred J. Bender was present at the meeting and that the purpose of the conveyance was discussed during the meeting.

In March 1983 the Staffords executed a contract to sell the restaurant property to defendant Trenor Corporation for a purchase price of $650,000. Trenor Corporation was controlled by defendant Fred J. Bender and his wife, defendant Judy H. Ben-

der, who were respectively president and secretary of the corporation. The Staffords executed a deed conveying the property to Trenor on 3 March 1983. The purchase price was financed by two notes secured by deeds of trust. One note was payable to the Staffords in the amount of $150,000, and the other was payable to Central Fidelity Bank in the amount of $500,000. Trenor Corporation executed a third note payable to the Staffords in the amount of $200,000. This third note stated that it was given as part of the purchase price of real property in Dare County, was unsecured, and bore no interest. Hayman testified that the sale took place without his knowledge and that he never received any proceeds from the sale. The Seafare Restaurant was destroyed by fire on 23 August 1984.

Plaintiff commenced this action on 27 August 1984 by obtaining an order extending time to file complaint. The complaint was filed on 17 September 1984.

Defendants Bender and Trenor were originally represented in this action by Wilton F. Walker. The parties to this appeal have stipulated that Mr. Walker died on 4 February 1985. Defendants apparently failed to obtain new counsel, and were unrepresented in this action after Mr. Walker's death through trial. On the day of the trial, defendant Judy Bender did not appear. Defendant Fred Bender appeared and requested a continuance for the purpose of obtaining counsel. Judge Small denied the request, and defendant Fred Bender proceeded *pro se*. Defendants did not present any evidence at trial. The jury returned a verdict awarding plaintiff $400,000 in damages. The court's judgment credited defendant with $137,000, that amount having been paid to plaintiff by two of the original defendants in return for dismissals. The reduced amount of $263,000 was then trebled pursuant to G.S. 75-16, resulting in a final judgment against defendants in the amount of $789,000. Defendants Bender appeal and plaintiff cross-appeals.

*Trimpi, Thompson and Nash, by C. Everett Thompson, II, and John G. Trimpi, for plaintiff-appellee.*

*Cherry, Cherry, Flythe and Overton, by Larry S. Overton, and Taylor and McLean, by Mitchell S. McLean, for defendant-appellants.*

PARKER, Judge.

Defendants appeal on numerous grounds set out in twenty assignments of error. Plaintiff makes two cross-assignments of error. Plaintiff first assigns error to the trial court's crediting of the judgment with the amount received by plaintiff in exchange for dismissals. Plaintiff also contends that the court erred in crediting this amount before rather than after the damage award was trebled. We first consider defendants' appeal.

## DEFENDANTS' APPEAL

[1] Defendants first assign error to the trial court's failure to dismiss plaintiff's complaint because it was not timely filed. Plaintiff obtained an order extending the time to file its complaint until 16 September 1984, but the complaint was not filed until 17 September 1984. 16 September 1984 fell on a Sunday, however, and we may take judicial notice of that fact. *State v. Brunson*, 285 N.C. 295, 302, 204 S.E. 2d 661, 665 (1974). Plaintiff therefore had an extra day in which to file its complaint, and the complaint was timely filed. Rule 6(a), N.C. Rules Civ. Proc.

[2] Defendants next assign error to the failure of the trial court to dismiss plaintiff's complaint for insufficiency of service of process. Defendant Fred J. Bender was served by leaving a copy of the complaint with his wife at his office. Defendants may be correct in arguing that this service is defective because a copy of the complaint was not left at defendant Fred Bender's dwelling house or usual place of abode as required by Rule 4(j)(1) of the N.C. Rules of Civil Procedure. Defendants failed, however, to raise this defense in the manner provided by Rule 12 of the N.C. Rules of Civil Procedure and thus waived the defense. Rule 12(h)(1), N.C. Rules Civ. Proc.

[3] Defendants' third assignment of error states that the trial court erred in submitting issues to the jury which were not supported by sufficient relevant and competent evidence. Defendants have excepted to all eight issues that were submitted, but made no objection to any of them at trial. If a party does not object to the submission of issues at trial, he cannot make the objection on appeal. *Baker v. Construction Corp.*, 255 N.C. 302, 307, 121 S.E. 2d 731, 735 (1961); *Hendrix v. Casualty Co.*, 44 N.C. App. 464, 467, 261 S.E. 2d 270, 272-73 (1980). Even if we were to consider this

issue on appeal, we find no merit in defendants' argument that the court should not have submitted an issue as to whether a fiduciary relationship existed between plaintiff and Stafford. Plaintiff presented sufficient evidence to support the submission of this issue to the jury. Defendants contend that plaintiff's evidence shows that the property was transferred to Stafford in order to deceive plaintiff's creditors. The evidence clearly shows, however, that plaintiff hoped that Stafford would sell the property for a good price, thus enabling plaintiff to pay its debts.

[4] Defendants also assign error to the trial court's instructions to the jury concerning the presumption of fraud when a fiduciary sells property held in trust for another. Specifically, defendant objects to the trial court's supplemental instructions on this issue after the jury foreman indicated that the jury could find no evidence of fraud on the part of Stafford. Again, defendants may not raise this issue on appeal because they failed to object to the instructions at trial. Rule 10(b)(2), N.C. Rules App. Proc. In any event, the trial judge properly instructed the jury that once plaintiff had shown the existence of a confidential relationship and a transfer of the property, fraud was presumed and plaintiff was not required to present direct evidence of fraud. *Sanders v. Spaulding and Perkins, Ltd.*, 82 N.C. App. 680, 681, 347 S.E. 2d 866, 867 (1986).

Defendants' next two assignments of error are that the trial court erred in failing to set aside the verdict and in denying defendants' motions for a new trial. Defendants argue that the trial court should have directed a verdict in their favor, yet they made no motions for a directed verdict or for judgment notwithstanding the verdict at trial. The exceptions listed under this assignment of error are exceptions to the judgment. An exception to the judgment does not question the sufficiency of the evidence. *Norman v. Royal Crown Bottling Co.*, 64 N.C. App. 200, 201, 306 S.E. 2d 828, 829 (1983). It raises only two questions of law: (i) whether the facts found support the conclusions of law and the judgment, and (ii) whether error appears on the face of the record. *Id.* In this case the jury's findings of fact clearly support the judgment and no error appears on the face of the record.

[5] Defendants contend that the trial court erred in denying their motions for new trial. The trial court found that it did not

have jurisdiction to hear the motions because defendants had filed notices of appeal at the same time they filed their motions for new trial. The trial court correctly held that it had no jurisdiction to grant a new trial when notices of appeal were filed the same day. *Homes, Inc. v. Peartree*, 24 N.C. App. 579, 211 S.E. 2d 457, *cert. denied*, 286 N.C. 722, 213 S.E. 2d 722 (1975). Defendants argue that the trial court retained jurisdiction because defendants had filed motions for stay of proceedings one minute before filing their notices of appeal. This argument has no merit because, even if one minute would make a difference, the motions to stay proceedings were made for the purpose of staying execution of the judgment pending disposition of the motions for new trial. The motions to stay proceedings had no effect on the trial court's jurisdiction once notice of appeal was filed and the motions for new trial were denied. Defendants also argue that the trial court should have retained jurisdiction under the reasoning of the Supreme Court in *Sink v. Easter*, 288 N.C. 183, 217 S.E. 2d 532 (1975). Defendants' reliance on that case is misplaced because the court in *Sink* did not consider a motion for a new trial but a motion for relief from judgment under Rule 60(b) of the N.C. Rules of Civil Procedure. The Supreme Court's reasoning in *Sink* was based in part on the fact that the time for making a motion under Rule 60(b) continues to run while the case is pending on appeal. *Sink*, 288 N.C. at 199, 217 S.E. 2d at 542-43. The same reasoning would not apply to a motion for new trial because such a motion must be made within 10 days after entry of judgment, which is the same time by which notice of appeal must be filed. Rule 59(b), N.C. Rules Civ. Proc. Moreover, Rule 3(c) of the N.C. Rules of Appellate Procedure tolls the time for giving notice of appeal when a timely motion for new trial has been made.

[6] Defendants next contend that the trial court erred in failing to grant defendants a continuance. Defendants' principal argument in this respect is that they were unfairly surprised by the previous settlements by and dismissals of the other original codefendants. Defendants apparently had no knowledge of these settlements and had been relying on their codefendants' counsels to represent their interests. Defendants had not been represented in this action since their original counsel died on 4 February 1985. A copy of the order setting trial on 3 November 1986 was mailed to defendants on 17 June 1986.

Rulings on motions to continue rest in the sound discretion of the trial judge and will not be reversed absent abuse of discretion. *Southern of Rocky Mount v. Woodward Specialty Sales*, 52 N.C. App. 549, 553, 279 S.E. 2d 32, 35 (1981). Although we find it somewhat disturbing that defendants were apparently unaware of the settlement negotiations of their codefendants, the trial court can only consider facts in the record when ruling on a motion to continue. *See Shankle v. Shankle*, 289 N.C. 473, 483, 223 S.E. 2d 380, 386 (1976). The record here shows that defendants failed to obtain counsel even when they were notified that the case was going to trial. Defendants were obviously mistaken in assuming that their codefendants would protect their interests. Given defendants' gross neglect in obtaining representation, the trial court did not abuse its discretion in denying defendants' request for a continuance.

[7] Defendants also contend that the trial court erred in not inquiring as to the whereabouts of defendant Judy Bender and in entering judgment against her in her absence. This Court has held that a judgment may be entered against a defendant in a civil case whose failure to appear is inexcusable. *Chris v. Hill*, 45 N.C. App. 287, 262 S.E. 2d 716, *disc. rev. denied and appeal dismissed*, 300 N.C. 371, 267 S.E. 2d 674 (1980). The Court in *Chris* specifically held that the trial court is not required to inquire as to the whereabouts of an absent defendant. *Id.* In this case, Judy Bender has not offered any excuse for her absence, and the trial court cannot be faulted for lack of concern with her whereabouts when her husband appeared at trial.

Defendants next assign error to the trial court's denial of their motion under Rule 12(b)(6) of the N.C. Rules of Civil Procedure without giving defendants an opportunity to be heard on the motion. The record shows that defendants did not object when the trial court summarily denied the motion. Defendants' discussion of this assignment of error in their brief merely restates their argument that plaintiff's complaint was not timely filed. We have already determined that this argument has no merit.

[8] Defendants also assign error to the trial court's calling the matter to trial without a pre-trial conference or the filing of a pre-trial order. The record shows that the trial court ordered that a

pre-trial order be tendered to the court on 13 October 1986. Plaintiff contends that plaintiff's counsel attempted to pre-try the case with defendants, but defendants did not cooperate. Defendants offer no explanation as to why no pre-trial order was submitted. A pre-trial conference is within the trial judge's discretion. Rule 16, N.C. Rules Civ. Proc. The assignment of error is therefore overruled.

Defendants next assign error to the admission of much of plaintiff's evidence. Defendants failed, however, to object to the admission of any evidence. To be the basis of an assignment of error on appeal, an exception to the admission of evidence must have been properly preserved by objection or motion to strike at trial. Rule 10(b)(1), N.C. Rules App. Proc.; *State v. Black*, 308 N.C. 736, 303 S.E. 2d 804 (1983). An unrepresented party is not relieved of the duty to object to evidence in order to preserve the issue for appeal. *State v. Jones*, 280 N.C. 322, 339-40, 185 S.E. 2d 858, 869 (1972). Nevertheless, we have considered defendants' arguments set forth in their brief and conclude there was no prejudicial error.

[9] Defendants contend that plaintiff used inadmissible hearsay testimony to prove the dealings between Michael Hayman and William Stafford. Defendants in their brief have listed over one hundred exceptions without any discussion in the text of the argument as to whether the evidence is hearsay, and if so, whether an exception to the hearsay rule applies. While almost all the evidence of these dealings was in hearsay form, the testimony in question was introduced primarily to prove that the restaurant property was deeded to Stafford in trust for plaintiff and that defendant Fred Bender had knowledge of that fact. Out-of-court declarations offered for these purposes would not be hearsay. *Furniture Co. v. Cole*, 207 N.C. 840, 844-45, 178 S.E. 579, 582 (1935) (testimony of witness as to declarations of purchaser competent to prove parol trust); *State v. Foster*, 293 N.C. 674, 682-83, 239 S.E. 2d 449, 455-56 (1977) (statements offered to prove knowledge are not hearsay). The nature of the conveyance to Stafford and defendants' knowledge thereof were the essential elements of defendants' liability. Any improperly admitted hearsay testimony therefore would not have deprived defendants of a fair trial.

[10] The other principal evidentiary argument made by defendants is that the trial court erred in allowing a paralegal employed by plaintiff's counsel to be called as a witness. Defendants contend that plaintiff's attorneys violated Rule 5.2 of the North Carolina Rules of Professional Conduct by calling their employee as a witness. This argument has no merit because Rule 5.2 only applies to lawyers, not their employees. Even if the rule did apply to paralegals, it would not apply in this case because the witness in question primarily testified for the purpose of authenticating documents and explaining certain basic aspects of real estate transactions. Rule 5.2(A)(2) provides that a lawyer may testify "[i]f the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony." The testimony in question fits this description, and we find no error in its admission.

Defendants next assign error to portions of plaintiff's counsel's closing argument. Again, defendants failed to object at trial. Even in the absence of an objection, however, the courts have a duty to correct errors in closing arguments, but only when the impropriety is gross. *Watson v. White*, 309 N.C. 498, 507, 308 S.E. 2d 268, 274 (1983). Defendants contend that there were two such improprieties in plaintiff's closing argument.

[11] Defendants first object to the following portion of the argument:

> Let me read to you what a noted authority on trust [sic] and trustees has said. "All persons aiding and assisting trustees of any character with a knowledge of their misconduct in misapplying assets are directly accountable to the persons injured. The wrong of participation in a breach of trust is divided into two (2) elements, an act or omission, which further completes the breach of trust by the trustee, and knowledge at the time that the transaction amounted to a breach of trust or the legal equivalent of such knowledge."

Defendants argue that this quote was improper because there is no indication that it is an accurate statement of North Carolina law. The quote is actually from G. Bogert, The Law of Trusts and Trustees § 901 at 257-59 (rev. 2d ed. 1982). The quote states a general principle of trust law which has been applied by the North Carolina courts. *See Abbitt v. Gregory*, 201 N.C. 577, 597-

99, 160 S.E. 896, 906-07 (1931). Arguments of counsel are largely in the control and discretion of the trial judge who must give counsel wide latitude in arguing the law. *State v. Taylor*, 289 N.C. 223, 226, 221 S.E. 2d 359, 362 (1976). The trial court did not err in allowing the above quote in closing argument.

Defendants' second objection is that, immediately after the above quote, plaintiff's counsel stated: "and that makes them both *liers*, [sic] and that makes them responsible . . . ." (Emphasis added.) Plaintiff contends that the word "liers" is a misquote and should read "liable." We agree that "liable" makes much more sense in this context, but we must assume that the record is correct. Although referring to defendants as liars is clearly improper, this single reference is not so prejudicial as to warrant a new trial.

[12] Defendants' final assignment of error is that the trial court erred in not requiring plaintiff to disclose all the consideration received in exchange for voluntary dismissals as to other codefendants. The record reveals that defendants were credited with $137,000, said amount having been received by plaintiff from codefendants Central Fidelity Bank and Andrew S. Rogerson. This amount was apparently brought to the trial court's attention by plaintiff; the record shows that defendants did not present any evidence on this matter, nor did they make any motion to require disclosure of consideration received by plaintiff. Defendants argue that there must have been consideration received from more than two codefendants, and they have offered a copy of a deed from codefendants Stafford to plaintiff's attorneys in support of their claim. This deed was not, however, offered as evidence at trial, and defendants' argument is mere conjecture. This Court cannot rule on a matter that was not properly presented at trial. *Hall v. Hall*, 35 N.C. App. 664, 242 S.E. 2d 170, *disc. rev. denied*, 295 N.C. 260, 245 S.E. 2d 777 (1978).

PLAINTIFF'S APPEAL

[13] Plaintiff first contends that the trial court erred in crediting defendants with the amount plaintiff received from codefendants in return for dismissals. Plaintiff's argument in its brief is based on the Uniform Contribution among Tort-Feasors Act. G.S., Chap. 1B, Art. 1. General Statute 1B-1(g) states: "This article shall not

apply to breaches of trust or of other fiduciary obligation." Plaintiff contends that defendants are not entitled to a credit because, pursuant to G.S. 1B-1(g), they have no right of contribution. As plaintiff's counsel acknowledged on oral argument, this argument has no merit. Defendants' credit in this case is not based on the statutory right of contribution, but on the principle that plaintiff can have only one recovery for its injury. This principle was well established at common law. *See Holland v. Utilities Co.*, 208 N.C. 289, 291, 180 S.E. 592, 593 (1935). Thus, defendants' right to have plaintiff's damages reduced by the amount of any settlements with codefendants is not conditioned on the application of G.S. Chap. 1B. The trial court correctly credited defendants with said amount.

[14] Plaintiff's second assignment of error is that the trial judge erred by crediting the amount received by plaintiff before rather than after trebling the damages pursuant to G.S. 75-16. Plaintiff argues that the credit should have been applied after the verdict of $400,000 was trebled. Plaintiff points out that G.S. 75-16 provides that "judgment shall be rendered . . . for *treble the amount fixed by the verdict.*" (Emphasis added.) Plaintiff further argues that the practice of crediting the damage award before it is trebled would thwart the remedial and punitive purposes of G.S. 75-16 because no recovery would be had if a plaintiff settled its claim for the full amount of damages.

Although the statute provides that the verdict is to be trebled, the title of G.S. 75-16 is "Civil action by person injured; *treble damages.*" (Emphasis added.) In the present case, the verdict amount was $400,000, but defendants argue that, because plaintiff received $137,000 from codefendants, the actual amount of plaintiff's *damages* is only $263,000.

The courts of this State have not previously ruled on this particular issue. Other jurisdictions have, however, considered whether a credit for amounts received from a codefendant should be applied before or after trebling a damage award. The Texas Court of Civil Appeals, when faced with this issue in the context of a treble damage award pursuant to a statute similar to G.S. 75-16, held that such a credit should be applied after the damages are trebled. *Providence Hospital v. Truly*, 611 S.W. 2d 127, 136 (Tex. Civ. App. 1980) (treble damages pursuant to Tex. Bus. &

Com. Code Ann. § 17.50(b)(1) (Vernon 1987)). The court based its holding on the punitive and remedial purposes of the statute and also on the ground that deducting the amount before trebling the award would discourage settlements. *Id.* The federal courts have used similar reasoning to reach the same result with regard to treble damage awards under the Clayton Act, 15 U.S.C.A. § 15. *See, e.g., Flintkote Company v. Lysfjord,* 246 F. 2d 368, 398 (9th Cir.), *cert. denied,* 355 U.S. 835, 78 S. Ct. 54, 2 L.Ed. 2d 46 (1957).

General Statute 75-16 is both remedial and punitive in nature. *Marshall v. Miller,* 302 N.C. 539, 546, 276 S.E. 2d 397, 402 (1981). Two purposes of the statutory provision for treble damages are to facilitate bringing actions where money damages are limited and to increase the incentive for reaching a settlement. *Id.* at 549, 276 S.E. 2d at 403-04. The reasoning of *Providence Hospital, supra,* and *Flintkote, supra,* is therefore applicable to a treble damage award pursuant to G.S. 75-16. Accordingly, we hold that the trial court in the present case erred by deducting the $137,000 before rather than after trebling the jury's award of damages. Plaintiff is therefore entitled to judgment in the amount of $1,063,000.

For the reasons stated above, we find no error in the trial but error in the judgment.

No error in the trial; error in the judgment; remanded for correction of judgment.

Judges EAGLES and MARTIN concur.

Judge MARTIN concurred in this opinion prior to 31 December 1987.