STROUD, Judge.
 

 *203
 
 Plaintiff William Hairston, Jr. ("plaintiff") appeals from the trial court's judgment allowing defendant Ashwell Bennett Harward, Jr. ("defendant Harward")'s motion for credits and setoffs against the tort judgment for the money plaintiff received through its underinsured motorist ("UIM") provider, unnamed defendant Erie Insurance Exchange
 
 *288
 
 ("unnamed defendant Erie"). The trial court's judgment also found that unnamed defendant Erie waived its right to subrogation and had no further duty. On appeal, plaintiff argues that the trial court should not have allowed the credit and that the court abused its discretion by not permitting plaintiff to take depositions of defendant's insurance provider, State Farm, and unnamed defendant Erie representatives. We hold that the trial court did not err in allowing defendant Harward the credit against the judgment for unnamed defendant Erie's payment under the settlement agreement, since unnamed defendant Erie waived all rights to subrogation. We further hold that the trial court did not abuse its discretion by not allowing plaintiff to take the additional requested depositions.
 

 Facts
 

 Plaintiff filed a complaint on 27 July 2011 against defendant Harward seeking to recover for injuries plaintiff received in a car crash between plaintiff and defendant Harward. Plaintiff later amended his complaint seeking additional relief from two other defendants; those defendants were later dismissed without prejudice and are not parties to this appeal. Unnamed defendant Erie filed a notice of appearance on 17 April 2013. On 14 August 2014, a jury returned a verdict finding plaintiff was injured by defendant Harward's negligence and that he was entitled to recover $263,000.00 for his personal injuries.
 

 On 15 September 2014, defendant Harward moved for setoffs and credits against the trial court's judgment. The trial court entered an order on 16 October 2014 reducing the judgment to $230,000.00 after finding that "[t]he parties agree that [defendant Harward] is entitled to setoffs or credits totaling $33,000.00 for the reasons set out in [defendant Harward's] September 15, 2014 Motion and that said setoffs or credits should be applied so that the judgment amount will be $230,000.00[.]" The court's order noted that the parties disagreed over whether defendant Harward should receive a credit for payment plaintiff received-following
 
 *204
 
 the jury verdict-from unnamed defendant Erie, his underinsured motorist coverage ("UIM") provider.
 

 Plaintiff filed a response to defendant's motion for setoffs and credits against the judgment on 17 September 2015. On 25 September 2015, unnamed defendant Erie's attorney filed an affidavit that included as "Exhibit 'A' " a settlement agreement between unnamed defendant Erie and plaintiff, entered on or about 3 October 2014. Under the settlement agreement, unnamed defendant Erie agreed to pay $145,000.00 in UIM coverage under plaintiff's policy. The affidavit noted:
 

 Following the verdict, Erie paid the remaining balance of $145,000.00 of its [UIM coverage] to the plaintiff in exchange for a Full and Final Release of All Claims ..., which clearly releases Erie's right of reimbursement and does not require the plaintiff to hold any amounts recovered from the defendant in trust.
 

 A hearing was held on defendant Harward's motion on 29 October 2015, and on 1 December 2015, the trial court entered its judgment, which contained these findings of fact:
 

 1. Erie, Plaintiff's underinsured motorists ("UIM") carrier, waived its subrogation rights prior to the commencement of trial.
 

 2. On September 11, 2014 counsel for Erie mailed directly to Plaintiff's counsel Erie's check for $145,000.00 which represented the remaining balance of Plaintiff's UIM coverage with Erie.
 

 3. In exchange for said payment Plaintiff executed a Full and Final Release of All Claims against Erie which clearly showed that Erie waived any and all rights of reimbursement and Plaintiff was not required to hold any amounts recovered from Defendant in trust.
 

 4. On October 9, 2014 State Farm, Defendant's liability carrier, mailed a check for $97,000.00 to Plaintiff's counsel.
 

 5. North Carolina courts have adopted the common law principle that a plaintiff should not be permitted a double recovery for a single injury,
 
 Baity v. Brewer
 
 ,
 
 122 N.C. App. 645
 
 ,
 
 470 S.E.2d 836
 
 (1996) ;
 
 Seafare Corp. v. Trenor Corp.
 
 ,
 
 88 N.C. App. 404
 
 ,
 
 363 S.E.2d 643
 
 (1988).
 

 *289
 

 *205
 
 6. In
 
 Wood v. Nunnery
 
 ,
 
 222 N.C. App. 303
 
 ,
 
 730 S.E.2d 222
 
 (2012) the Court of Appeals cited the UIM statute:
 

 In the event of payment, the underinsured motorist insurer shall be either: (a) entitled to receive by assignment from the claimant any right or (b) subrogated to the claimant's right regarding any claim the claimant has or had against the owner, operator, or maintainer of the underinsured highway vehicle, provided that the amount of the insurer's right by subrogation or assignment shall not exceed payments made to the claimant by the insurer.
 
 N.C. Gen. Stat. § 20-279.21
 
 (b)(4) (2011).
 
 222 N.C. App. at 307
 
 ,
 
 730 S.E.2d at 225
 
 .
 

 7. In
 
 Wood
 
 , unlike this case, the UIM carrier paid the money to the clerk and not to the plaintiff directly and did not waive its right of subrogation; therefore, the UIM carrier still retained the right of subrogation. Because the UIM carrier's subrogation right remained, the Defendant in
 
 Wood
 
 was not entitled to credit for payments made by the UIM carrier.
 

 8. The Court has carefully considered Defendant's motion for credits and setoffs and is of the opinion and so finds, in its sound discretion, that Defendant's motion should be allowed; Defendant is entitled to a credit for the $97,000.00 paid by State Farm directly to Plaintiff and is further entitled to a credit for the $145,000.00 paid by Erie directly to Plaintiff.
 

 9. Because Erie has waived its right to subrogation and reimbursement, the Court is of the opinion and does so find that Erie has no further duty in this matter.
 

 10. Plaintiff's motion for leave to take further depositions has been carefully considered by the Court and the Court, in its sound discretion, is of the opinion and so finds that ... the motion should be denied at this time.
 

 11. Plaintiff's motions to strike the affidavits of Kent L. Hamrick and Stephanie W. Anderson have also been carefully considered by the Court and the Court, in its sound discretion, is of the opinion and so finds that the motions should be denied.
 

 *206
 
 12. Counsel for Plaintiff argued that Plaintiff's UIM coverage is a collateral source and requested that the Court enter an order to that effect, but the Court is of the opinion that such is not necessary for the entry of this judgment.
 

 The trial court then concluded:
 

 1. This court concludes as a matter of law that the UIM carrier, Erie, has waived its right of subrogation, waived any right to reimbursement and paid the $145,000.00 it owed directly to the Plaintiff. Therefore, since no subrogation rights remain, the Defendant Harward is entitled to credit for the $145,000.00 payment made by the UIM carrier. To find otherwise would create a double recovery for the plaintiff which is disfavored by the common law of North Carolina.
 

 2. Defendant Harward is also entitled to a credit for the $97,000.00 paid directly to Plaintiff by State Farm.
 

 3. Because Erie has waived its rights of subrogation and reimbursement, it has no further duty in this matter.
 

 4. Plaintiff's motion for leave to take post-verdict depositions is addressed to the discretion of the Court and the Court concludes that the motion is not supported by sufficient facts to be allowed.
 

 5. Plaintiffs have not presented the Court with sufficient facts why the affidavits of Kent L. Hamrick and Stephanie W. Anderson should not be considered.
 

 6. The Court makes no ruling on whether Plaintiff's UIM coverage is a collateral source as such issue would be more properly addressed by the Appellate Courts.
 

 The trial court then ordered:
 

 1. Defendant Harward's motion for credits and setoffs is allowed;
 

 2. Plaintiff shall have and recover from Defendant Harward the sum of $46,527.12
 
 [1]
 
 with post-judgment interest
 
 *207
 
 on
 
 *290
 
 said sum at the daily rate of $10.1977 from the date of the entry of this judgment until paid; In light of this Court's order of October 16, 2014, Plaintiff shall not be entitled to recover any pre-judgment interest on said sum;
 

 3. Because Erie has waived its right to subrogation and reimbursement, it has no further duty in this matter;
 

 4. All parties, named and unnamed, shall bear their own court costs, expenses and attorney's fees;
 

 5. Plaintiff's motions to strike the affidavits of Kent L. Hamrick and Stephanie W. Anderson are, in the Court's discretion, denied.
 

 6. Plaintiff's motion to take post-verdict depositions in the Court's discretion, denied at this time[.]
 

 Plaintiff timely appealed to this Court.
 

 Discussion
 

 Plaintiff raises two issues on appeal: first, whether the trial court erred when it allowed defendant Harward to receive credit against the tort judgment for the money plaintiff received from his UIM provider, Erie; and second, whether the trial court abused its discretion when it denied plaintiff's motion for leave to take post-verdict depositions of defendant Erie and State Farm personnel. We find no error and no abuse of discretion with the trial court's judgment.
 

 I. Defendant Harward's Credit for UIM Compensation Received
 

 Plaintiff first argues that "the trial court erred when it credited the tort judgment against [defendant] Harward with the money plaintiff received in contract from plaintiff's insurance carrier [UIM coverage]." (All caps and underlined in original). The trial court concluded in the present case that "since no subrogation rights remain, the Defendant Harward is entitled to credit for the $145,000.00 payment made by the UIM carrier [unnamed defendant Erie]."
 

 *208
 
 When we review an order from a non-jury trial, we are strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law. Conclusions of law drawn by the trial court from its findings of fact are reviewable de novo on appeal.
 

 Holloway v. Holloway
 
 ,
 
 221 N.C. App. 156
 
 , 164,
 
 726 S.E.2d 198
 
 , 204 (2012) (citations and quotation marks omitted).
 

 Plaintiff's brief begins with a discussion of the collateral source rule, and plaintiff argues that UIM benefits are a collateral source, so defendant Harward cannot reduce his tort liability for those benefits received from plaintiff's provider, unnamed defendant Erie.
 

 The purpose of the collateral source rule is
 
 to exclude evidence of payments made to the plaintiff by sources other than the defendant when this evidence is offered for the purpose of diminishing the defendant tortfeasor's liability to the injured plaintiff.
 
 The policy behind the rule is to prevent a tortfeasor from reducing his own liability for damages by the amount of compensation the injured party receives from an independent source. This rule is punitive in nature, and is intended to prevent the tortfeasor from a windfall when a portion of the plaintiff's damages have been paid by a collateral source. In this [s]tate, and many others, the collateral source rule typically is applied only in actions arising under tort law.
 

 Wilson v. Burch Farms, Inc.
 
 ,
 
 176 N.C. App. 629
 
 , 638-39,
 
 627 S.E.2d 249
 
 , 257 (2006) (citations, quotation marks, and brackets omitted) (emphasis added).
 
 See also
 

 Badgett v. Davis
 
 ,
 
 104 N.C. App. 760
 
 , 764,
 
 411 S.E.2d 200
 
 , 203 (1991) ("In summary, the collateral source rule excludes evidence of payments made to the plaintiff by sources other than the defendant
 
 *291
 
 when this evidence is offered for the purpose of diminishing the defendant tortfeasor's liability to the injured plaintiff."). But the collateral source rule is not relevant to the issue presented here, since there is no question regarding evidence presented at the trial. Rather, the issue before us is the proper sources of payment of the jury verdict and the allocation of the liability among defendant Harward's liability insurer (State Farm), plaintiff's underinsured carrier (unnamed defendant Erie), and defendant Harward.
 
 *209
 
 The closest case to have touched on the issue in this case appears to be
 
 Wood v. Nunnery
 
 ,
 
 222 N.C. App. 303
 
 ,
 
 730 S.E.2d 222
 
 (2012) ("
 
 Wood I
 
 ")
 
 [2]
 
 . In
 
 Wood I
 
 , this Court found that the trial court had erred when it concluded that payments the plaintiff received from the defendant's insurer (State Farm) and plaintiff's UIM provider (Firemen's) "constituted satisfaction of the judgment entered against defendant."
 
 Id
 
 . at 305,
 
 730 S.E.2d at 224
 
 . This Court concluded in
 
 Wood
 
 that the defendant was only entitled to a credit against the judgment for the amount paid by State Farm, the defendant's insurer, but not for the amount paid by Firemen's, plaintiff's UIM carrier.
 
 Id
 
 . at 308,
 
 730 S.E.2d at 225-26
 
 . In so concluding, this Court noted the reason defendant could not receive a credit for Firemen's payment was Firemen's still had a statutory right of subrogation:
 

 Since Firemen's paid $202,627.58 into the office of the Clerk of Court for Forsyth County, and not to plaintiff directly, there would have been no "assignment" or subrogation receipt executed by plaintiff to Firemen's. However, under subsection (b) of [
 
 N.C. Gen. Stat. § 20-279.21
 
 (2011) ], Firemen's would be subrogated to plaintiff's right against defendant to the extent of its payment ($202,627.58). Because of this statutory right of subrogation, defendant cannot be entitled to a credit against the judgment for payments made by Firemen's as a UIM carrier. Since no party has raised the issue of whether Firemen's is estopped from seeking subrogation from defendant by adopting defendant's brief, we do not address that issue.
 

 Id
 
 . at 307,
 
 730 S.E.2d at 225
 
 .
 

 Here, unnamed defendant Erie waived its right to subrogation in the settlement agreement with plaintiff, so the same argument would not apply. Unlike Firemen's in
 
 Wood I
 
 , unnamed defendant Erie is no longer a party and no longer has a right to subrogation, so the amount is final and will not change in the future. The issue of whether UIM coverage should be credited against payments made on a tort judgment when subrogation and the right of reimbursement have been waived is an issue this
 
 *210
 
 Court has not explicitly addressed. But based on this Court's decision in
 
 Wood I
 
 and other prior decisions, we hold that the trial court did not err in this case when it allowed defendant Harward to credit unnamed defendant Erie's UIM payment towards the tort judgment amount.
 

 Additional case law indicates that subrogation may be relevant to the payment of a judgment, as opposed to the evidence the jury can consider, because factoring in subrogation at that stage helps prevent a windfall profit. For example, in
 
 Baity v. Brewer
 
 ,
 
 122 N.C. App. 645
 
 , 646-47,
 
 470 S.E.2d 836
 
 , 837-38 (1996), this Court found that the trial court erred when it denied a defendant-defendant Poole-credit for the settlement payment the plaintiff received from another defendant, defendant Brewer. This Court explained:
 

 Defendant Poole based her motion for credit not on any right of contribution under Chapter 1B but on the common-law principle that a plaintiff should not be permitted a double recovery for a single injury.
 

 In
 
 Holland v. Southern Public Utilities Co.
 
 ,
 
 208 N.C. 289
 
 ,
 
 180 S.E. 592
 
 (1935), our Supreme Court stated that "any amount paid by anybody, whether they be joint tort-feasors or otherwise, for and on account of any injury or damage should be
 
 *292
 
 held for a credit on the total recovery in any action for the same injury or damage."
 
 Id
 
 . at 292,
 
 180 S.E. at 593-94
 
 .... The rule in
 
 Holland
 
 is directly on point here and mandates reversal of the portion of the trial court's judgment denying Poole a credit.
 

 Baity
 
 ,
 
 122 N.C. App. at 647
 
 ,
 
 470 S.E.2d at 837-38
 
 .
 

 The amicus briefs and the parties have addressed public policy arguments at some length, including plaintiff's argument that if this Court finds the trial court's order was correct and its reasoning was allowed to remain, "it would foster collusion between liability and UIM carriers to reach secret waivers of subrogation forcing more cases to trial and depriving a plaintiff of his right to arbitrate under his UIM policy which is contingent of the offer of policy limits by the liability carrier." Plaintiff may or may not be right, but this Court is not at liberty to change the law. These same public policy arguments were raised in
 
 Wood II
 
 's appeal to the Supreme Court, and rather than address them further, the Court dismissed the case
 
 per curiam
 
 by finding discretionary review was improvidently allowed.
 
 Wood
 
 , 368 N.C. at 30, 771 S.E.2d at 762. Thus,
 
 Wood I
 
 remains controlling law. And there was no secret waiver of subrogation in this case; unnamed defendant Erie's settlement agreement is
 
 *211
 
 in the record on appeal and referenced in several documents presented to the trial court. We hold that unnamed defendant Erie's waiver of its right to subrogation was relevant and the trial court appropriately concluded that defendant Harward could use unnamed defendant Erie's payment to plaintiff as a credit against the jury verdict judgment.
 

 II. Denial of Plaintiff's Motion for Leave to Take Post-Verdict Depositions
 

 Plaintiff also argues that the trial court erred when it denied plaintiff's motion to take depositions of State Farm and unnamed defendant Erie representatives. Specifically, plaintiff contends that "the trial court erred and abused its discretion when [it] refused to permit Plaintiff to take post-judgment depositions of State Farm and [unnamed defendant] Erie representatives to determine the facts and [c]ircumstances concerning the waiver of subrogation."
 

 Plaintiff filed a motion on 29 October 2015 to strike the affidavit of unnamed defendant Erie's counsel and moved for leave of the trial court to take post-verdict depositions of "appropriate Erie and State Farm personnel and their agents to determine the facts and circumstances concerning the purported waiver of subrogation by Erie and including but not limited to whether State Farm agreed not to tender its policy limits in exchange for a waiver of subrogation by [unnamed defendant Erie] ...." The trial court concluded that "Plaintiff's motion to take post-verdict depositions is, in the Court's discretion, denied at this time[.]"
 

 A motion to take a deposition is a discovery order, and "our review of a trial court's discovery order is quite deferential: the order will only be upset on appeal by a showing that the trial court abused its discretion."
 
 Isom v. Bank of Am., N.A.
 
 ,
 
 177 N.C. App. 406
 
 , 410,
 
 628 S.E.2d 458
 
 , 461 (2006). "The abuse of discretion standard is intended to give great leeway to the trial court and a clear abuse of discretion must be shown."
 
 Hill v. Hill
 
 ,
 
 173 N.C. App. 309
 
 , 315,
 
 622 S.E.2d 503
 
 , 508 (2005) (citation and quotation marks omitted).
 

 Plaintiff claims that the waiver of subrogation was not disclosed until after the jury verdict in August 2014, but the waiver of subrogation was not relevant to the jury's verdict. The jury verdict simply found that plaintiff was injured by defendant Harward's negligence and set the amount of damages plaintiff could recover from defendant Harward. The waiver of subrogation was disclosed in affidavits before the trial court ruled on plaintiff's motion for post-verdict depositions. The majority of plaintiff's arguments on this issue suggest collusion and conspiracy between various insurance providers. Plaintiff once again argues that this Court should consider the public policy impact of such claims
 
 *212
 
 of collusion or conspiracy, but as noted above, there is no legal remedy available here. Again, many of the same arguments were raised before our Supreme Court in the
 
 Wood II
 
 appeal, and the Supreme
 
 *293
 
 Court, issuing a
 
 per curiam
 
 decision, declined to address those issues further.
 
 See
 

 Wood
 
 , 368 N.C. at 30, 771 S.E.2d at 762. It is the role of the General Assembly to address any public policy implications for this sort of potential "collusion" between insurance companies. We therefore hold that the trial court did not abuse its discretion.
 

 Conclusion
 

 We conclude that the trial court did not err when it allowed defendant Harward to setoff and receive a credit against the tort judgment for the $145,000.00 payment plaintiff received from unnamed defendant Erie. We further find that the trial court did not abuse its discretion when it did not permit plaintiff to conduct depositions of defendant's insurer, State Farm, and unnamed defendant Erie's representatives.
 

 AFFIRMED.
 

 Judge DAVIS concur.
 

 Judge HUNTER, JR. dissents in separate opinion.
 

 HUNTER, JR., Robert N., Judge, dissenting in a separate opinion.
 

 I respectfully dissent from the majority's holding the trial court did not err in crediting Plaintiff's judgment against Defendant with the UIM benefits Plaintiff received from unnamed Defendant Erie.
 

 The majority concluded this Court's opinion in
 
 Wood v. Nunnery
 
 ,
 
 222 N.C. App. 303
 
 ,
 
 730 S.E.2d 222
 
 (2012) is distinguishable from the instant case since unnamed Defendant Erie waived its right to subrogation. This distinction is not outcome determinative since Plaintiff's recovery in
 
 Wood
 
 , like the Plaintiffs' recovery in this case, is based on a jury verdict finding Defendant's negligence responsible for Plaintiff's injuries.
 

 The language in
 
 Wood
 
 which the majority relies upon is
 
 obiter dictum
 
 :
 

 Since Firemen's paid $202,627.58 into the office of the Clerk of Court for Forsyth County, and not to plaintiff directly, there would have been no "assignment" or subrogation receipt executed by plaintiff to Firemen's. However, under subsection (b) of [
 
 N.C. Gen. Stat. § 20-279.21
 
 (2011) ], Firemen's would be subrogated to
 
 *213
 
 plaintiff's right against defendant to the extent of its payment ($202,627.58). Because of this statutory right of subrogation, defendant cannot be entitled to a credit against the judgment for payments made by Firemen's as a UIM carrier. Since no party has raised the issue of whether Firemen's is estopped from seeking subrogation from defendant by adopting defendant's brief, we do not address that issue.
 

 Id.
 

 at 307
 
 ,
 
 730 S.E.2d at 225
 
 .
 

 The facts in
 
 Wood
 
 are essentially identical to the case at bar. In
 
 Wood
 
 this Court recognized the trial court "conflated the concepts of the amounts owed by defendant as the tortfeasor" and the amount owed by the UIM:
 

 Plaintiff instituted this action against defendant, seeking monetary damages for personal injuries proximately caused by the negligence of defendant. ... The trial court entered judgment against only defendant. This judgment was based upon defendant's negligence and was a tort recovery.
 

 The liability of [the UIM] is based in contract, not in tort.
 

 Id.
 

 at 305-06
 
 ,
 
 730 S.E.2d at 224
 
 . Here, as in
 
 Wood
 
 , Defendant's tort liability is a separate entity from unnamed Defendant Erie's contractual obligation. Plaintiff contracted with unnamed Defendant Erie and purchased underinsured motorist coverage. Even though unnamed Defendant Erie is now released from its contractual liability to Plaintiff, this does not mean Defendant is released from the $263,000.00 judgment he owes Plaintiff.
 
 [3]
 

 Additionally,
 
 N.C. Gen. Stat. § 20-279.21
 
 (b)(4) pertains to UIM coverage and is part of the Financial Responsibility Act of 1953. This statute provides for UIM coverage to apply when a Defendant's liability policy is exhausted.
 

 Id.
 

 As the consideration for the payment of policy limits, the injured party
 
 *294
 
 may execute a covenant not to enforce a judgment against a tortfeasor.
 

 Id.
 

 The effect of this allows a plaintiff to proceed against separate defendants, or to proceed with claims for benefits under the applicable UIM coverage.
 

 Id.
 

 *214
 
 The pertinent statutory provision provides:
 

 As consideration for payment of policy limits by a liability insurer on behalf of the owner, operator, or maintainer of an underinsured motor vehicle, a party injured by an underinsured motor vehicle may execute a contractual covenant not to enforce against the owner, operator, or maintainer of the vehicle any judgment that exceeds the policy limits. A covenant not to enforce judgment shall not preclude the injured party from pursuing available underinsured motorist benefits, unless the terms of the covenant expressly provide otherwise, and shall not preclude an insurer providing underinsured motorist coverage from pursuing any right of subrogation.
 

 N.C. Gen. Stat. § 20-279.21
 
 (b)(4) (2016). This statute provides no language stating that a tortfeasor is entitled to a credit from a plaintiff's UIM insurer. There is also no language stating a tortfeasor has a right to avoid the enforcement of a judgment. Rather, this statute reveals the North Carolina public policy of an injured party's right to either enforce or not enforce a judgment against a tortfeasor: when the policy limits of the tortfeasor's liability insurer have been paid, an injured party may, at his option, covenant to forego his right to enforce a judgment under the statute.
 

 Unnamed Defendant Erie waived its statutory right of recovery. This action only affects Erie. Unnamed Defendant Erie's agreement to waive subrogation from Plaintiff does not bar Plaintiff's right to seek satisfaction of the judgment against Defendant. Nothing under
 
 N.C. Gen. Stat. § 20-279.21
 
 (b)(4) provides Plaintiff with a "double recovery" in this case just because Erie abandoned its right to recovery. The fact Erie elected to not pursue its legal right to subrogation is immaterial to Plaintiff's right to have his judgment against Defendant satisfied by Defendant. To apply Plaintiff's UIM benefits as a credit against the judgment results in an improper windfall for Defendant.
 

 The operative statute balances the interests of the tortfeasor, its liability insurer, the injured victim and the UIM insurer. Under
 
 N.C. Gen. Stat. § 20-279.21
 
 (b)(4) the liability insurer must seek resolution of the claim within its policy limits. Here, the liability carrier protects its insured and is released from any obligation to participate in the defense of the injured victim's claim. At the same time, the statute also provides opportunities for the UIM to recoup the payments made to its insured. This way the statute protects UIM's interests as well as the victim's
 
 *215
 
 contractual rights. The UIM has the right of subrogation when it honors its contractual obligations towards its insured. It also fulfills the purpose of the UIM provision of the Financial Responsibility Act as it serves "to compensate innocent victims injured by financially irresponsible motorists."
 
 Wilmoth v. State Farm Mut. Auto Ins. Co.
 
 ,
 
 127 N.C. App. 260
 
 , 264,
 
 488 S.E.2d 628
 
 , 631 (1997). If a tortfeasor receives credit for UIM payments, the statutory right of subrogation is meaningless, and this upsets the statutory balance among competing interests.
 

 [1]
 

 We have been unable to determine, based on the record on appeal, precisely how the trial court reached this sum as the remaining amount plaintiff could recover from defendant Harward after all credits and setoffs were allowed. Defendant Harward paid plaintiff $46,669.92 in December 2015. Based on our math, it appears that plaintiff ultimately recovered more than $321,000.00-on a $263,000.00 jury verdict-from multiple insurance companies and defendants. We realize that interest on the judgment would have increased the amount owed. But since no one has disputed the mathematical calculations on appeal-other than regarding whether the $145,000 payment from unnamed defendant Erie should have been credited against the judgment-we leave the trial court's calculations undisturbed.
 

 [2]
 

 This Court issued a subsequent unpublished decision after
 
 Wood I
 
 was remanded to the trial court.
 
 See
 

 Wood v. Nunnery
 
 ,
 
 232 N.C. App. 523
 
 ,
 
 757 S.E.2d 526
 
 ,
 
 2014 WL 640884
 
 , 2014 N.C. App. Lexis 219 (2014) (unpublished) ("
 
 Wood II
 
 "). The North Carolina Supreme Court had the opportunity to review
 
 Wood II
 
 , but instead found discretionary review was improvidently allowed.
 
 Wood v. Nunnery
 
 ,
 
 368 N.C. 30
 
 ,
 
 771 S.E.2d 762
 
 (2015) (
 
 per curiam
 
 ).
 

 [3]
 

 Assume a person murders a man with a substantial life insurance policy. Under the majority's analysis, would the murderer would be entitled to a credit for the victim's life insurance proceeds?