U.S. HELICOPTERS, INC. v. DAVID C. BLACK

No. 796PA85

(Filed 29 August 1986)

1. Bailment § 3.3— defendant as bailee of helicopter—sufficiency of evidence

   In an action to recover for damages to plaintiff's helicopter, plaintiff's evidence was sufficient to show that defendant was bailee of the aircraft where it tended to show that plaintiff contracted with defendant and with defendant alone to hire out to defendant a helicopter so that he could learn to fly; defend-

ant furnished his own instructor and paid plaintiff the sum charged; on the day of the crash, plaintiff gave defendant access to the helicopter, and defendant and his instructor took it out; and no agent of plaintiff accompanied them.

**2. Principal and Agent § 1— helicopter crash during flying lesson—flight instructor as defendant student's agent**

In an action to recover for damages to plaintiff's helicopter which occurred during a crash while defendant was taking flying lessons, plaintiff's evidence was sufficient to show that the flight instructor was defendant's agent where it tended to show that defendant contracted with plaintiff to furnish his own instructor; defendant selected a friend whose other contacts with plaintiff were infrequent and occurred largely after the agreement between plaintiff and defendant; the instructor did not make a practice of teaching students to fly helicopters; except for substituting for plaintiff's regular instructor on one occasion, defendant was the instructor's only pupil; and defendant furnished the helicopter in which the instructor taught him.

ON discretionary review of a decision of the North Carolina Court of Appeals, 77 N.C. App. 827, 336 S.E. 2d 449 (1985), affirming an order granting defendant's motion for a directed verdict entered by *Collier, J.*, at the 11 February 1985 Civil Session of Superior Court, UNION County. Heard in the Supreme Court 14 May 1986.

*Dawkins & Lee, P.A., by Koy E. Dawkins, for plaintiff-appellant.*

*Parker, Poe, Thompson, Bernstein, Gage & Preston, by William E. Poe and Irvin W. Hankins III, for defendant-appellee.*

FRYE, Justice.

Plaintiff initiated this suit on 10 January 1983 by filing a complaint that alleged, in substance, that defendant had negligently damaged one of its helicopters while in possession of the helicopter as bailee. The case was tried before a jury at the 11 February 1985 Civil Session of Superior Court, Union County. At the close of plaintiff's evidence, defendant moved for a directed verdict pursuant to Rule 50 of the North Carolina Rules of Civil Procedure, and the trial judge granted the motion. Plaintiff appealed, and the Court of Appeals affirmed the decision of the trial judge. Plaintiff petitioned this Court for discretionary review of the Court of Appeals' decision. The petition was allowed 18 February 1986. For the reasons outlined below, we find that defend-

ant's motion should not have been granted and accordingly reverse the decision of the Court of Appeals.

On defendant's motion for a directed verdict, plaintiff's evidence must be taken as true and viewed in the light most favorable to the plaintiff. *Manganello v. Permastone, Inc.*, 291 N.C. 666, 231 S.E. 2d 678 (1977). The plaintiff must also be given the benefit of every reasonable inference to be drawn therefrom. *Id.* The question for the trial judge to resolve is the sufficiency of the evidence, when viewed in this manner, to take the case to the jury and support a verdict for the plaintiff. *Id.* This question should not be resolved against the plaintiff unless it appears, as a matter of law, that the plaintiff cannot recover upon any view of the facts that the evidence reasonably tends to establish. *Id.* In the instant case, when taken as true and viewed in the light most favorable to the plaintiff, the evidence showed the following facts.

Plaintiff in 1982 was in the business of providing helicopters for a variety of charters, for rentals, and for instruction. Its usual practice with students was to charge the student a single hourly rate that included the use of a helicopter and the services of an instructor. It had its own regular instructor. Defendant approached plaintiff in April of 1982 about renting a helicopter to learn to fly. Defendant specifically rejected the services of plaintiff's regular instructor, however, preferring to receive instructions from a friend named Ron Manning. Manning was a qualified instructor. Plaintiff's acting president, Creswell Horne, Jr., accordingly agreed to defendant's use of Manning and arranged to rent a helicopter to defendant for $115 an hour, the difference between his usual hourly rate for students and the fee he paid his regular instructor. Defendant and Manning flew together on several occasions.

On 18 September 1982, defendant and Manning took the helicopter out to practice certain maneuvers which defendant needed to improve before he could obtain a helicopter pilot's license. The helicopter was in good condition when defendant and Manning took it out. According to defendant's testimony at a pretrial deposition introduced at trial, Manning told him to get on the controls with him and "follow through," which meant that defendant was to keep his hands and feet on the controls while the other man performed a particular maneuver so that defendant could

"feel" what he did. Manning then began a maneuver known as an autorotation. In this maneuver, according to the evidence, the pilot simulates a safe landing after an engine failure. The pilot lands the helicopter, or alternatively stops and hovers within a few feet of the ground, without using the engine. On this occasion, however, instead of either landing or coming to a halt and hovering just off the ground, the helicopter crashed. Defendant stated that Manning later told him that during the maneuver, he, Manning had told defendant to take over. Defendant testified that he did not hear Manning due to an unexplained failure of the intercom, which had been working well up to that point and was working after the crash. Manning told Horne after the accident that he had been unable to get hold of the controls in time to prevent the crash.

Both parties agreed that Manning, as the instructor, was the "pilot in command" as defined by F.A.A. regulations. The "pilot in command" is responsible for the operation and safety of an aircraft during flight. 14 C.F.S. § 91.3 (1986).

Plaintiff called an expert witness who testified in effect that Manning had been negligent in several respects, including, *inter alia*, his omission to verify that defendant had heard him before releasing control and his failure to recover the controls in time to prevent the crash.

Plaintiff also introduced testimony about the amount of its damages.

The Court of Appeals concluded that the trial court did not err in directing a verdict for defendant because the plaintiff's evidence tended to show that the helicopter was damaged as a result of the negligence of Manning, the instructor pilot, rather than defendant.

However, the rule in North Carolina is that a bailee is liable not only for the results of his own negligence but also for that of his agents. *Vincent v. Woody*, 238 N.C. 118, 76 S.E. 2d 356 (1953). Therefore, if plaintiff's evidence, taken in the light most favorable to plaintiff, could reasonably establish that defendant was a bailee and that Manning was defendant's agent, a directed verdict for defendant would not be proper. *See Manganello v. Permastone, Inc.*, 291 N.C. 666, 231 S.E. 2d 678.

[1]    Accordingly, the first question to consider is whether defendant was the bailee of the helicopter. To establish the existence of a bailment with defendant as bailee, plaintiff must show that it delivered the helicopter to defendant, that defendant accepted it, and that it was in defendant's sole custody. *See Freeman v. Service Co.*, 226 N.C. 736, 40 S.E. 2d 365 (1946); *Wells v. West*, 212 N.C. 656, 194 S.E. 313 (1937). Plaintiff's evidence, taken in the light most favorable to the plaintiff, established that plaintiff contracted with defendant and with defendant alone to hire out to defendant a helicopter so that defendant could learn to fly. Defendant furnished his own instructor, and defendant paid plaintiff the sum charged. On the day of the crash, plaintiff gave defendant access to the helicopter, and defendant and Manning took it out. No agent of plaintiff's accompanied them. Under the facts of this case, plaintiff has shown sufficient evidence, if believed, to establish that a bailment did exist and that defendant was the bailee.

Defendant, however, contends that he was not the bailee because plaintiff's evidence establishes that plaintiff surrendered control to Manning, not to defendant, and that Manning was in control at the time of the crash. To support this argument, defendant relies upon F.A.A. regulations placing responsibility for the safety of an aircraft upon the pilot in command, in this case, Manning, and upon the fact that according to defendant's testimony, he believed that Manning was in fact in control of the helicopter. While these points may establish that Manning had *actual* control, nevertheless, this fact would not alter defendant's status as bailee. Taken in the light most favorable to the plaintiff, plaintiff's evidence, as discussed previously, was sufficient to establish that plaintiff hired the helicopter out to defendant for defendant's own instructor to teach him how to fly, not to Manning to use in order to teach a selected student how to fly. Manning's control of the helicopter in this instance therefore came about only because defendant entrusted him with the task of teaching defendant to fly. Defendant as bailee remained in *legal* control of the helicopter.

[2]    Having established that plaintiff introduced sufficient evidence to show that defendant was the bailee of the helicopter, we turn next to the question of whether Manning was his agent. " 'An agent is one who acts for or in the place of another by au-

thority from him.' " *Julian v. Lawton,* 240 N.C. 436, 440, 82 S.E. 2d 210, 213 (1954). On this record, viewed in the light most favorable to the plaintiff, Manning was defendant's agent. Defendant contracted with plaintiff to furnish his own instructor. He selected Ron Manning, whose other contacts with the plaintiff were infrequent and occurred largely after the agreement between plaintiff and defendant. As far as the evidence at trial discloses, Manning did not make a practice of teaching students to fly helicopters. Rather, except for substituting for plaintiff's regular instructor on one occasion, defendant appears to have been Manning's only pupil. Defendant furnished the helicopter in which Manning taught him. Taken as a whole, a jury could conclude from these facts that Manning was acting for defendant and with his authority in instructing defendant and operating the helicopter. Therefore, under the rule set forth in *Vincent v. Woody,* 238 N.C. 118, 76 S.E. 2d 356, defendant would be liable for Manning's negligence.

Defendant argues that his case is distinguishable from *Vincent v. Woody.* Defendant would have this Court interpret *Vincent v. Woody* as holding that if the bailor consents to the bailee's entrustment of the bailed goods to a third person, then the bailee is not liable to the bailor for the negligence of that third person. Plaintiff assented to defendant's choice of Manning. Defendant argues that he cannot therefore be liable for Manning's negligence.

Defendant's argument is based upon a misreading of *Vincent v. Woody.* In that case, plaintiff Vincent delivered his automobile and certificate of title to defendant Woody for Woody to sell on his behalf. Woody in turn delivered the car to one Herndon for repairs, and Herndon drove the car and negligently damaged it. Plaintiff Vincent contended that defendant Woody delivered the car to Herndon without his knowledge or consent, and Woody contended that he and plaintiff together delivered the car to Herndon and that plaintiff gave Herndon the instructions to repair the car. The jury found for the plaintiff. On defendant Woody's appeal, the Court held that on the record before it, Herndon had been Woody's agent. Thus, in *Vincent v. Woody,* the question was not whether plaintiff consented to defendant's use of defendant's agent, but whose agent Herndon was.

Defendant in the instant case relies upon the following passage to support his interpretation:

> The excerpt from the charge of the court directed to the evidence on this phase of the case, . . . [instructs the jury that] [i]n the event 'the automobile was placed in possession of Herndon without the knowledge, consent, or permission of the plaintiff; and as a result of the automobile having been placed in his possession, Herndon's, without the knowledge, consent, or permission of the plaintiff, and it was then damaged by Herndon; then Woody would be liable for the damage done to said automobile while in the possession of Herndon . . . .'

*Vincent*, 238 N.C. at 120, 76 S.E. 2d at 358. Defendant notes that the Court went on to hold that the judge's charge was correct.

Taken out of context, the passage quoted above does appear to support defendant's contention. However, this passage appears as part of the following paragraph:

> The plaintiff contended that the vehicle was delivered to Herndon without his knowledge or consent. Woody contended it was delivered by him and plaintiff jointly and plaintiff gave instructions as to the repairs and replacements to be made by the mechanic. The excerpt from the charge of the court directed to the evidence on this phase of the case, to which defendant excepts, lifted out of context, would seem to make defendant an insurer of the safe return of the property bailed in an undamaged condition. In the event 'the automobile was placed in possession of Herndon without the knowledge, consent, or permission of the plaintiff; and as a result of the automobile having been placed in his possession, Herndon's, without the knowledge, consent, or permission of the plaintiff, and it was then damaged by Herndon; then Woody would be liable for the damage done to said automobile while in the possession of Herndon . . . .'

*Id.* The Court went on to say:

> But it is axiomatic that the charge must be read and construed contextually. Immediately preceding the instruction to which exception is entered the court had correctly instructed the jury as to defendants' liability. Immediately following,

the court emphasized the fact that defendants' liability in any event depended upon the presence or absence of negligence. It then applied the law specifically to the case on trial in the following language:

'So that in this case, if you find that the relationship of bailor and bailee existed between the plaintiff and defendant, the defendant had imposed upon him the responsibility of exercising due care to return the property in the same condition as it was when delivered to him, or to keep the same in good order and condition until bail was made. And if by his failure to exercise due care, the property was damaged in any amount, the plaintiff would have carried the burden of the fourth issue, entitling him to nominal damages at least. And this fact is so prominent (sic), that if the defendant placed the car in the hands of some other person; that is to say, if Woody placed the car in the hands of Herndon, and Herndon failed to use due care and subjected it to abuse; then Woody is answerable to any conduct on the part of Herndon that caused a decrease in value of the automobile; and he, Woody, delivering the car to Herndon, would and did make Herndon his agent.'

*Id.* at 120-21, 76 S.E. 2d at 358-59. The Court then concluded that taken as a whole, the judge's charge to the jury was essentially correct. *Id.* at 121, 76 S.E. 2d at 359.

To summarize, plaintiff has shown sufficient evidence, taken in the light most favorable to it, to establish the existence of a bailment with defendant as bailee, that Manning, the instructor pilot, was acting as defendant's agent, and that the crash was due to Manning's negligence. Accordingly, a directed verdict for defendant was not proper.

For all of the reasons discussed herein, the decision of the Court of Appeals is reversed, and this case is remanded to that court for further remand to the Superior Court, Union County, for further proceedings not inconsistent with this opinion.

Reversed and remanded.