KELLY BRAMLETT, INDIVIDUALLY; KELLY BRAMLETT, ADMINISTRATOR OF THE ESTATE OF WILLIAM ROBERT BRAMLETT, DECEASED; AND EUGENE M. CARR III, ANCILLARY ADMINISTRATOR OF THE ESTATE OF WILLIAM ROBERT BRAMLETT, DECEASED, PLAINTIFFS v. OVERNITE TRANSPORT, IVAN HERRON; CABLE PLANT MANAGEMENT, INC.; ESSEX COMMUNICATION CORP., D/B/A ESSEX CABLE CATV, AND COAST TO COAST CATV, INC., DEFENDANTS

No. 9029SC775

(Filed 5 March 1991)

1. **Negligence § 30.1 (NCI3d)— wrongful death—installation of cable by subcontractor—summary judgment for contractor**

     The trial court did not err by granting defendant Coast to Coast's motion for summary judgment in a wrongful death action arising from the severing of a cable being installed across a highway. The relationship between Coast to Coast and Wilson Construction, the deceased's employer, was one of contractor and subcontractor; Coast to Coast neither exercised dominion and control of decedent's workplace nor controlled the manner in which Wilson Construction performed the project, and plaintiff's argument for a nondelegable duty to ensure a safe workplace must therefore fail.

     **Am Jur 2d, Plant and Job Safety § 137.**

2. **Bailment § 20 (NCI4th)— wrongful death—loan of equipment by contractor to subcontractor—no liability as bailor**

     The trial court did not err by granting summary judgment for defendant Coast to Coast in a wrongful death action arising from the severing of a cable being installed across a highway where plaintiff contended that Coast to Coast was liable as a bailor for defects in the equipment but deceased was an

employee of the subcontractor; Coast to Coast loaned the equip-. ment to the subcontractor without charge; the subcontractor's possession of the equipment was that of a bailee under bailment for the sole benefit of the bailee; and Coast to Coast is not liable under a bailment theory for the subcontractor's failure to exercise due care in the use of the bailed equipment. Moreover, even assuming that the bailment relationship was one of mutual benefit, the forecast of evidence suggests that the proximate cause of the accident was the improper stringing of cable rather than the loaned equipment.

**Am Jur 2d, Bailment § 275.**

APPEAL by plaintiffs from order entered 25 April 1990 by *Judge Julius Rousseau* in HENDERSON County Superior Court. Heard in the Court of Appeals 12 February 1991.

Plaintiff Kelly Bramlett, individually and as Administrator of the Estate of William Robert Bramlett, and Eugene M. Carr, III, as Ancillary Administrator of said estate sought damages for the wrongful death of the deceased. Defendant Coast to Coast CATV, Inc. (hereinafter "Coast to Coast") was added to the action by amended complaint. Following substantial discovery, plaintiffs dismissed without prejudice defendants Cable Plant Management, Inc., Essex Communication Corp., Overnite Transport and Ivan Herron. Defendant Coast to Coast thereafter moved for and was granted summary judgment. Plaintiffs appeal.

*Toms & Bazzle, P.A., by Ervin W. Bazzle, for plaintiffs-appellants.*

*Roberts Stevens & Cogburn, P.A., by Frank P. Graham, for defendant-appellee Coast to Coast CATV, Inc.*

JOHNSON, Judge.

On 21 October 1987, William Robert Bramlett was killed in an accident at or near the intersection of Highway 191 and North Mills River Road in Henderson County, North Carolina, when an Overnite tractor-trailer operated by Ivan Herron struck a cable wire which was being installed across the highway. Mr. Bramlett was hanging cable for Wilson Construction Company (hereinafter "Wilson Construction") on a project that was being undertaken for Essex Communication, a local cable franchise. In 1987 Essex

**BRAMLETT v. OVERNITE TRANSPORT**

[102 N.C. App. 77 (1991)]

Communication was engaged in placing cable lines throughout the county. Essex Communication contracted with Cable Plant Management to have this work done and Cable Plant Management in turn accepted a bid from Coast to Coast to hang the cable lines. Coast to Coast then subcontracted the work to Wilson Construction pursuant to a verbal contract. Approximately one week prior to the accident, Wilson Construction hired Mr. Bramlett.

Wilson Construction was owned by Clinton Wilson and he arranged the Henderson County project with Rick LaBarron, vice-president of Coast to Coast. Under the contract, Wilson Construction was paid based upon the number of feet of line it installed and was required to hire its own employees, pay their taxes, social security, workers' compensation insurance, provide most of the equipment needed and comply with all state and federal regulations. Wilson Construction was allowed to hire whomever it wanted to assist in stringing the cable and to employ whatever means it felt were necessary to complete the job.

Wilson Construction borrowed cable trucks from Coast to Coast wherein Coast to Coast provided the insurance and the license tags. No rental or leasing fee was charged and Wilson Construction was responsible for the borrowed equipment. If any equipment had been lost or stolen, Wilson Construction was required to replace it.

On the jobsite on the day of the accident, Russell Wilson, Obie Bilyeu and Robert Bramlett were stringing cable. The truck they were using was pulled onto the shoulder near the intersection of Highway 191 and North Mills River Road. Bilyeu and Bramlett climbed two poles to stretch the cable across the two roads while Wilson placed cones in the road and flagged traffic. Bilyeu and Bramlett pulled the cable tight manually. Wilson then left the highway and got into the truck to "suck up" the cable, pulling it tight so that it could be clamped with a three bolt clamp. This was done by advancing the truck forward with the free end of the cable line attached to it. Once the cable was tightened, Bilyeu and Bramlett clamped it down to the poles. To check to see if it was securely fastened, Bilyeu struck the line with a wrench. Upon being asked three times by Wilson if the cable was properly clamped and tightened, Bramlett responded in the affirmative. Wilson then backed up the truck.

At the same time that Wilson backed the cable truck up, an Overnite tractor-trailer approached the work site travelling down Highway 191 in a path perpendicular to the recently strung cable. The tractor-trailer caught the cable and pulled it through the clamp which Bramlett had fastened. The cable snapped and the stress and rupture of the cable fractured Bilyeu's arm and severed Bramlett's head.

[1] On appeal, plaintiffs first contend that the trial court improvidently granted defendant Coast to Coast's motion for summary judgment. Specifically, plaintiffs contend that Coast to Coast is liable since it had a nondelegable duty to maintain a safe workplace for Wilson Construction and its employees. Relying upon *Cathey v. Southeastern Construction Co.*, 218 N.C. 525, 11 S.E.2d 571 (1940), plaintiffs argue that Coast to Coast knew or should have known that the equipment used by Wilson Construction was insufficient to meet state and federal safety standards and is therefore liable. We disagree.

Summary judgment should be granted when the moving party can show that there is no genuine issue of material fact and that he is entitled to a judgment as a matter of law. G.S. § 1A-1, Rule 56. In ruling on a motion for summary judgment, the trial court must consider the pleadings, depositions, answers to interrogatories, admissions and affidavits, if any, in the light most favorable to the nonmoving party. *Carter v. Poole*, 66 N.C. App. 143, 310 S.E.2d 617, *rev. denied*, 310 N.C. 624, 315 S.E.2d 689 (1984). "While summary judgment is generally not appropriate in negligence cases, it may be appropriate when it appears that there can be no recovery for plaintiff, even if the facts presented by the plaintiff are taken as true." *Frendlich v. Vaughan's Food*, 64 N.C. App. 332, 335, 307 S.E.2d 412, 414 (1983). Where the evidence clearly indicates that: (1) the plaintiff failed to use ordinary care; (2) want of due care was at least one of the proximate causes of the injury; and (3) the plaintiff was contributorily negligent as a matter of law, summary judgment is appropriate. *Carter*, 66 N.C. App. 143, 310 S.E.2d 617.

Initially, it is important to note that the relationship between Coast to Coast and Wilson Construction was one of contractor and subcontractor. And more importantly, absent a showing that the contractor participated in the negligent act, a contractor is not liable for injuries sustained by the subcontractor's employee.

## BRAMLETT v. OVERNITE TRANSPORT
[102 N.C. App. 77 (1991)]

*See Rivenbark v. Atlantic States Construction Co.,* 14 N.C. App. 609, 188 S.E.2d 747, *cert. denied,* 281 N.C. 623, 190 S.E.2d 471 (1972) (plaintiff sued for injuries arising from the failure of the contractor to provide a safe workplace; held contractor not liable since it did not participate in the negligent act). Pursuant to the nondelegable duty exception, liability will be found where the contractor exercises dominion and control over the workplace. *Spivey v. Babcock & Wilcox Co.,* 264 N.C. 387, 141 S.E.2d 808 (1965). With this stated exception comes the realization that where the contractor does not own or exercise dominion and control over the land on which the work is being done, and does not control the actions of the subcontractor, no liability for an injury to the subcontractor's employee will exist. *Id.*

This Court recently addressed the same issue in *Britt v. American Hoist & Derrick Co.,* 97 N.C. App. 442, 388 S.E.2d 613 (1990). In *Britt,* defendant American Hoist entered into a contract with Miller Building Corporation to convert a building into an American Hoist manufacturing facility. Plaintiff was employed by Goodyear Mechanical Contracting Company, Inc. to work at the American Hoist facility being converted by Miller. Plaintiff and another Goodyear employee were operating a manlift while another Goodyear employee served as a lookout from the ground nearby. In the same area where the plaintiff was elevated in the manlift, an American Hoist employee, defendant Ray Alden, was operating a pendant crane which subsequently struck plaintiff's manlift. Plaintiff brought a civil action seeking damages from defendants American Hoist and Alden for personal injuries allegedly sustained by their negligence. In affirming summary judgment for defendant on the issue of negligence, we stated that:

> As a matter of law, Miller cannot be held liable for the negligence of an employee of its subcontractor Goodyear, if there is no evidence of Miller's control of Goodyear's operations.

*Id.* at 446, 388 S.E.2d at 616.

Likewise, Coast to Coast neither exercised dominion and control over the decedent's workplace, the highway where the cable operation was taking place, nor controlled the manner in which Wilson Construction performed the project. Therefore, the nondelegable duty to ensure a safe workplace argument put forth by plaintiffs must fail.

**[2]** Last, plaintiffs contend that as a bailor for mutual benefit, Coast to Coast is liable for injuries caused by defects in the equipment. Again, we disagree.

A bailment is created when a third person accepts the sole custody of some property given from another. *U. S. Helicopters, Inc. v. Black*, 318 N.C. 268, 347 S.E.2d 431 (1986). North Carolina recognizes three types of bailments: (1) bailments for the sole benefit of the bailor; (2) bailments for the sole benefit of the bailee-gratuitous bailments; and (3) bailments for the mutual benefit of both parties. *Clott v. Greyhound Lines, Inc.*, 278 N.C. 378, 180 S.E.2d 102 (1971). Where both parties have an immediate pecuniary interest served by the creation of the bailment, such bailment is for mutual benefit. *Norwood v. Cox Armature Works*, 22 N.C. App. 288, 206 S.E.2d 340 (1974). Where, however, only the bailee acquires a benefit from the bailment, such bailment is gratuitous; and in such case the bailor of the equipment is not liable to third parties where the bailee negligently used the bailed equipment to which he had all control. *DeArmon v. B. Mears Corp.*, 312 N.C. 749, 325 S.E.2d 223 (1985).

The foreseeable evidence suggests that Coast to Coast loaned nine cones and two stop signs to Wilson Construction without a rental or leasing fee being charged and that Wilson Construction accepted sole custody of the equipment to use as a subcontractor of Coast to Coast. Coast to Coast derived no economic advantage as a result of the bailment. In fact, the only party which received a benefit from the bailment was Wilson Construction. Therefore, Wilson Construction's possession of Coast to Coast's equipment was that of a bailee under a bailment for the sole benefit of the bailee. As such, Coast to Coast is not liable under a bailment theory for Wilson Construction's failure to exercise due care in the use of the bailed equipment.

Taking the present facts as they exist, but assuming that the bailment relationship between Coast to Coast and Wilson Construction was one of mutual benefit, the forecasted evidence nevertheless suggests that the proximate cause of the accident was not the number of stop signs and cones provided by Coast to Coast, or lack thereof as asserted by plaintiffs. Rather, the forecasted evidence suggests that the proximate cause of the accident was the improper stringing of cable wire to wit the decedent had control.

REINHARDT v. WOMEN'S PAVILION

[102 N.C. App. 83 (1991)]

Accordingly, the order below granting defendant Coast to Coast's motion for summary judgment is

Affirmed.

Judges PARKER and ORR concur.