ANDREW T. BADGETT v. DR. J. B. DAVIS

No. 9115SC133

(Filed 17 December 1991)

1. **Damages § 53 (NCI4th) — collateral source rule**

     The collateral source rule excludes evidence of payments made to the plaintiff by sources other than the defendant when this evidence is offered for the purpose of diminishing the defendant tortfeasor's liability to the injured plaintiff.

     **Am Jur 2d, Damages § 566.**

2. **Damages § 53 (NCI4th) — collateral source rule — Medicare payments — admission on court's own motion**

     Plaintiff was prejudiced by the trial court's violation of the collateral source rule in this medical malpractice action when the court, on its own motion, admitted a hospital cash ledger containing references to Medicare payments of some of plaintiff's medical expenses after defendant requested that the references to Medicare be deleted.

     **Am Jur 2d, Damages §§ 571, 587.**

     **Collateral source rule: Injured person's hospitalization or medical insurance as affecting damages recoverable. 77 ALR3d 415.**

3. **Evidence and Witnesses § 672 (NCI4th) — objection to evidence — no waiver by introduction of similar testimony**

     Plaintiff did not waive objection to the admission of collateral source references on a hospital cash ledger showing Medicare payments of plaintiff's hospital expenses when he introduced a medical clinic cash ledger showing Medicare payments of plaintiff's doctor bills where the court had made

it clear when defendant objected to the Medicare references on the hospital ledger that evidence of medical expenses would not be admitted without showing the jury how the total was computed, and plaintiff was entitled to assume that the court would make the same ruling as to the medical clinic's ledger. N.C.G.S. § 1A-1, Rule 46(a)(1).

**Am Jur 2d, Damages §§ 933, 966; Trial § 420.**

APPEAL by plaintiff from judgment entered 4 June 1990 by *Judge J. B. Allen, Jr.* in ALAMANCE County Superior Court. Heard in the Court of Appeals 12 November 1991.

*McLeod & McLeod, by William F. McLeod, Jr., and Young, Haskins, Mann & Gregory, by Robert W. Mann, for plaintiff-appellant.*

*Henson Henson Bayliss & Sue, by Perry C. Henson and Lyn K. Broom, for appellee.*

LEWIS, Judge.

Defendant, Dr. Davis, admitted plaintiff, Mr. Badgett, to a detoxification center on 17 June 1982 where plaintiff was given the medication dilantin to prevent seizures. Plaintiff developed an allergic reaction, toxic epidermal necrolysis, which plaintiff attributed to dilantin. Plaintiff filed suit against Dr. Davis on 23 November 1988 alleging negligent prescription of a drug which defendant knew plaintiff to be allergic. Plaintiff presented photographs of his blotched and blistered skin to prove his pain and suffering, but was unable to produce an itemized bill to prove his medical expenses as the hospital in which he was treated kept itemized bills for only five years. Mr. Badgett's bill was destroyed in 1987. The hospital had retained a cash ledger which documented the time, date, and amount of all payments made on each patient's account.

The court held a *voir dire* examination outside the jury's presence in which the ledger was examined through its custodian. During this conference, the custodian indicated that Mr. Badgett's hospital costs were reconstructed from the cash ledger entries by combining the amounts actually paid with the amounts written off. Plaintiff asked the court to mark the ledger plaintiff's exhibit 10 for purposes of identification, but did not request that it be

admitted into evidence. Defendant questioned the use of the exhibit without its being admitted. The court indicated that it would be unfair to permit testimony as to the total bill without evidence to show how the custodian arrived at this total. The ledger was admitted under Rule 803(6). Plaintiff objected to the admission of exhibit 10 based upon the collateral source rule and requested that the court's clerk delete the exhibit's reference to Medicare. This was not done. Though the record does not indicate any ruling, the court indicated that the ledger would be admitted and plaintiff could explain it in any manner which plaintiff so desired. Plaintiff excepted.

On direct examination before the jury, plaintiff asked the custodian to give the total cost of Mr. Badgett's hospitalization. She testified that the total was $17,270.52 and that Medicare had paid these bills in part. She testified that according to the hospital's contract with Medicare, the unpaid balance was written off and could not thereafter be collected from the plaintiff. Over defendant's objection the custodian testified that Medicare had a lien for the amounts it expended on Mr. Badgett's medical bills. Plaintiff's next witness was the Department of Clinics record keeper who issued the doctor bill. The same computational gyrations as above were necessary to reconstruct Mr. Badgett's final doctor bill. The Clinic cash ledger was labeled plaintiff's exhibit 11 and was admitted without objection. The record keeper indicated that the doctor bill was $1,450.87. Plaintiff specifically asked how much of the doctor bill had been paid by "Medicare." The record keeper revealed the amount which was paid by "Medicare."

During the lengthy charge conference, no jury instruction regarding the collateral source rule or the witnesses' references to the Medicare payments was requested or given. The jury awarded plaintiff $18,000.00 in damages. Plaintiff moved to set aside the damage award as having been improperly influenced by the prejudicial admission of evidence that plaintiff's medical bills were paid by Medicare and because the damage award was inadequate as a matter of law. This motion was denied. Plaintiff appeals the denial of this motion.

The case at bar is peculiar in that neither the defendant nor the plaintiff requested that the evidence containing the offensive Medicare references be admitted at trial. The court, on its own motion, admitted the initial cash ledger which contained the offen-

## BADGETT v. DAVIS

[104 N.C. App. 760 (1991)]

sive references. In this instance, we are asked to decide upon whose back the scales of justice should be balanced. The collateral source rule is a protective device normally invoked to shield a plaintiff from a defendant's attempts to lower the damage award. Because we believe that the plaintiff's shield was pierced by the court's admission of the cash ledger in unredacted form despite the plaintiff's request to the contrary, we reverse and remand for a new trial on the issue of damages. Though the plaintiff missed several opportunities to either keep the Medicare payments from the jury or to cure the prejudicial effect of the admission, plaintiff's request for the deletion of the offensive references was sufficient to invoke the collateral source rule such that the ledger's subsequent introduction in unaltered form was an abuse of discretion.

Exclusion of prejudicial evidence is the foundation of the collateral source rule. This rule provides that "evidence of a plaintiff's receipt of benefits for his or her injury or disability from sources collateral to defendant generally is not admissible." *White v. Lowery*, 84 N.C. App. 433, 435, 352 S.E.2d 866, 868 (1987), *disc. rev. denied*, 319 N.C. 678, 356 S.E.2d 786 (1987). These benefits include payments from both public and private sources. *Young v. Baltimore & Ohio R. R. Co.*, 266 N.C. 458, 466, 146 S.E.2d 441, 446 (1966). This rule gives force to the public policy which prohibits a tortfeasor from reducing "his own liability for damages by the amount of compensation the injured party receives from an independent source." *White*, at 436, 352 S.E.2d at 868 (citation omitted). Evidence of collateral source payments violate the rule whether admitted in the defendant's case-in-chief or on cross examination of the plaintiff's witness. *Cates v. Wilson*, 321 N.C. 1, 4, 361 S.E.2d 734, 736 (1987). "[T]he erroneous admission of collateral source evidence often must result in a new trial." *Cates*, at 10, 361 S.E.2d at 739-40.

In *Cates*, a malpractice action, the plaintiff-mother of a mentally retarded infant, presented a witness who mentioned the availability of publicly funded education and residential facilities for the mentally retarded, but who testified that the future of these special education programs was speculative at best and that it was in the child's best interest to remain in his mother's home. Defendant introduced evidence that plaintiff's medical bills were paid by Medicaid, that plaintiff received child support payments, and on cross examination of plaintiff's witness that publicly funded residential facilities for the retarded were available. Defendant argued that the collateral source rule did not apply where the "plaintiffs 'opened the door'

by bringing the matter up first." *Id.* at 9, 361 S.E.2d 739. The Court disagreed and stated that "plaintiff did not 'open the door' with respect to past or future . . . benefits." *Id.* The Court rationalized that because "gratuitous government benefits" are covered by the collateral source rule and because introduction of collateral source evidence creates a " 'substantial likelihood of prejudicial impact,' " a new trial on damages was warranted. *Cates*, at 10, 361 S.E.2d at 739-40 (citation omitted). When collateral source evidence is admitted, the probability is great that "juries will consider the availability of collateral sources as indicative of the lack of any real damages." *Cates*, at 10, 361 S.E.2d at 740. A defendant's emphasis on " 'the numerous gratuitous avenues of compensation [that] existed for plaintiff['s] benefit substantially erode[s] plaintiff['s] verdict-worthiness. . . .' " *Cates*, at 11, 361 S.E.2d at 739-40 (citation omitted).

[1, 2] In summary, the collateral source rule excludes evidence of payments made to the plaintiff by sources other than the defendant when this evidence is offered for the purpose of diminishing the defendant tortfeasor's liability to the injured plaintiff. Though the case at hand does not fit within the usual application of the collateral source rule, the spirit of this rule is broad enough to cover this scenario. In *Cates*, our Supreme Court held that evidence of gratuitous government benefits was so likely to prejudice the jury that it should be excluded and its introduction would result in a new trial. Though, unlike *Cates*, there was no overt attempt by either party to have the cash ledger admitted into evidence, we nonetheless find *Cates* controlling in the case at bar. On his own motion, the trial judge admitted exhibit 10 into evidence. During *voir dire*, plaintiff requested, on the record, that the references to Medicare be deleted. The judge apparently never ruled as we find nothing in the record to so indicate. We take this request for deletion to be a motion. Therefore, like *Cates*, evidence of a gratuitous government benefit was admitted into evidence over plaintiff's clear objection. This evidentiary admission was so likely to have prejudiced plaintiff's recovery that we remand the case for a new trial on the issue of damages.

[3] The defendant argues that plaintiff's direct question asking plaintiff's own witness about "Medicare" payments and the plaintiff's subsequent admission of plaintiff's exhibit 11 without objection show that plaintiff waived his objection to the admission of the collateral source. "Exception to the admission of testimony is waived

when testimony of the same import is thereafter admitted without objection." *McNeil v. Williams*, 16 N.C. App. 322, 324, 191 S.E.2d 916, 918 (1972) (citation omitted). However, both statute and case law provide that an objection overruled assumes continued objection to the specific line of questioning. N.C.R.Civ. P. 46(a)(1); *Duke Power Co. v. Winebarger*, 300 N.C. 57, 68, 265 S.E.2d 227, 234 (1980). It is the objecting attorney's duty to:

> alert the trial judge to the specific legal infirmities which may inhere in a *'specified* line of questioning.' If at that point counsel's objection is overruled, he is entitled to assume the court will continue to make the same ruling in response to subsequent objections to the same line of questioning.

> \* \* \* \*

> [T]he requirement in Rule 46(a)(1) that counsel object to a 'specified' line of questioning is obviously satisfied where, as here, the 'line' of questioning objected to is apparent to the court and the parties.

*Id.* In the case at bar, plaintiff objected to the admission of the cash ledger based upon the collateral source rule. The court made it clear that it would not admit evidence of the medical expenses without evidence showing the jury how the total was computed. Hence, the plaintiff was entitled to assume that the court would make the same ruling as to the Clinic's ledger which was admitted as plaintiff's exhibit 11.

As we reverse and remand this case for a new trial, we decline to consider plaintiff's second assignment of error on the issue of insufficiency of damages.

Reversed and remanded.

Judges WELLS and WALKER concur.