PAUL BRYAN WILSON, Plaintiff v. BURCH FARMS, INC., Defendant

No. COA05-207

(Filed 21 March 2006)

**1. Appeal and Error— preservation of charge objection— objection not repeated**

Defendant's objection at the charge conference preserved for appeal the question of whether proper instructions were given even though he did not object again after the instructions were given.

**2. Bailments— instructions—perishable agricultural commodities**

The trial court did not err by instructing on the Perishable Agricultural Commodities Act (PACA) in plaintiff's bailment and contract action arising from storage of his sweet potatoes. The trial court instructed the jury fully and completely on defendant's obligations to plaintiff under both federal law and the oral contract between the parties. In the context of the entire charge, the court's instruction on the requirements of PACA did not mislead the jury.

**3. Contracts— storage of sweet potatoes—oral agreement— directed verdict**

The trial court did not err by denying defendant's motion for a directed verdict on a breach of contract claim arising from the defendant's storage and disposal of plaintiff's sweet potatoes where the evidence created an issue of fact concerning the terms of the contract and the marketability of plaintiff's crop.

**4. Appeal and Error— lack of supporting authority—argument abandoned**

Defendant's argument concerning a set-off in an agricultural contract case was deemed abandoned for failure to cite supporting statutory or case law.

**5. Damages— sweet potato storage and disposal—USDA payments and verdict for negligence—collateral source rule— applicability**

The trial court erred in an action arising from defendant's storage and disposal of plaintiff's sweet potatoes by granting a set-off for amounts plaintiff received from the USDA Quality Assurance Program. The USDA payments and the jury's verdict were for different losses, and the collateral source rule does not apply.

**6. Bailment— storage and disposal of sweet potatoes—consignment and bailment**

The trial court erred by dismissing plaintiff's bailment claim arising from the storage of his sweet potatoes where plaintiff had left the crop with defendant for sorting and selling under an oral agreement, and defendant disposed of the crop as not marketable. While a consignment relationship may have existed, the relationship was also that of a bailment.

Appeal by defendant from judgment entered 14 July 2004 by Judge Christopher M. Collier in Richmond County Superior Court. Heard in the Court of Appeals 18 October 2005.

*Henry T. Drake, for plaintiff-appellee.*

*White & Allen, P.A., by David J. Fillippeli, Jr. and Gregory E. Floyd, for defendant-appellant.*

WILSON v. BURCH FARMS, INC.

[176 N.C. App. 629 (2006)]

JACKSON, Judge.

Paul Bryan Wilson ("plaintiff") is a sweet potato farmer in Richmond County, North Carolina. Beginning in 1996 or 1997, plaintiff entered into an agreement with Burch Farms, Inc. ("defendant"), under the terms of which plaintiff would harvest his crop of sweet potatoes, and bring the crop to defendant. Thereafter, defendant would store the sweet potatoes for plaintiff, and many other farmers, and then run them through a process known as grading and packing. This process separates the potatoes based on type and quality, after which defendant would then sell the potatoes to various grocery store chains or other customers. After defendant sold what it could of plaintiff's crop, it would account to plaintiff with the proceeds from the sale, minus the administrative costs of storing and processing the produce.

In the fall of 2000, plaintiff farmed fifty acres of sweet potatoes, and entered into an agreement with defendant as he had in prior years. In November 2000, plaintiff delivered ten thousand two hundred (10,200) bushels of sweet potatoes, which defendant stored at a leased facility in Smithfield. Plaintiff stated at trial that all of these potatoes were of good quality and were freshly harvested at the time of shipment to defendant. Defendant's primary packing and storing facility is located in Faison, North Carolina, and at the time of plaintiff's shipment to defendant, the Faison facility was full. In May 2001, plaintiff shipped an additional three thousand three hundred (3,300) bushels of sweet potatoes to defendant's Faison facility. Both parties agreed upon inspection of the May 2001 shipment, that this shipment was not of marketable quality and was of no use to either party. This shipment was then "dumped" by defendant with plaintiff's consent.

As defendant ran plaintiff's and other farmer's sweet potatoes through the grading and packing process, unmarketable and rotten potatoes were removed from the bushels and discarded, or "dumped." Defendant regularly dumped plaintiff's and other farmer's produce if it began to rot or sprout roots while in storage, and before it could be graded and packed. Both plaintiff and Ted Burch ("Burch"), supervisor of defendant's packing house, testified that it was common practice in the industry for the broker, or defendant in this case, to notify the farmer if something was wrong with his crop, so that the farmer could come and look at the crop and retrieve it if he wanted to do so, prior to the broker's dumping the crop. During plaintiff's and defendant's previous dealings, defendant regularly dumped unmarketable and rotten bushels of plaintiff's sweet potato

crops, with plaintiff's consent and without prior notification to plaintiff. At no time during the parties' dealings together had defendant ever had to dump plaintiff's entire sweet potato crop.

During the summer of 2001, defendant transported plaintiff's sweet potatoes being stored in Smithfield, to the Faison facility. Upon arrival of the potatoes, Burch testified that he immediately saw problems with the crop. Plaintiff testified that defendant informed him that the sweet potatoes would be processed shortly after their arrival at the Faison facility. In September 2001, plaintiff contacted defendant for an accounting of the ten thousand two hundred bushels of potatoes that originally had been stored in Smithfield. At this time, plaintiff was informed that defendant had dumped all of plaintiff's sweet potatoes approximately one month prior, due to the potatoes' being unmarketable and of poor quality. At no time prior to defendant's dumping plaintiff's potatoes was plaintiff notified that there was a problem with his crop.

Defendant provided a letter to plaintiff stating that plaintiff's crop of sweet potatoes for the year 2000 was of poor quality as a result of weather conditions, and therefore plaintiff's potatoes were unmarketable and were dumped by defendant. With this letter, plaintiff submitted an application to the U.S. Department of Agriculture ("USDA"), for compensation through the Quality Loss Program, which was designed to compensate farmers for cases in which their crop yield was low or unmarketable. Plaintiff received twenty-three thousand four hundred and eighty-four dollars ($23,484.00) in compensation from the USDA, representing compensation for only a portion of plaintiff's entire 2000 sweet potato crop, at only a fraction of the usual market price.

On 30 August 2002, plaintiff filed a complaint in Richmond County Superior Court alleging various claims against defendant. Plaintiff's complaint alleged claims for breach of contract and negligence on the part of a bailee. At trial, both parties testified along with several other farmers and employees of defendant. At the close of plaintiff's evidence, defendant made a motion for directed verdict on both of plaintiff's claims. The trial court denied defendant's motion as to the breach of contract claim, and granted the motion on the bailment claim, thereby dismissing plaintiff's bailment claim. The jury returned a verdict finding that defendant had breached its oral contract with plaintiff, and awarded plaintiff damages in the amount of fifty thousand dollars ($50,000.00). The trial court then made findings of fact regarding the compensation plaintiff received from the federal

WILSON v. BURCH FARMS, INC.

[176 N.C. App. 629 (2006)]

government, and proceeded to grant defendant a set-off against plaintiff's damages award in the total amount of twenty-one thousand six hundred fifteen dollars and thirty cents ($21,615.30). From the jury verdict and award of damages to the plaintiff, defendant appeals. Plaintiff cross appeals on the trial court's dismissal of the bailment claim and the reduction of the damages awarded.

**[1]** Defendant's first assignment of error concerns the trial court's instructions to the jury regarding the requirements of the Perishable Agricultural Commodities Act ("PACA") for dumping perishable agricultural commodities. Defendant contends the instruction on PACA's requirements constituted reversible error in that PACA was not applicable in the present case, as plaintiff's case was one in state court for a breach of contract claim.

The record demonstrates that before the trial court instructed the jury, a charge conference was held with the attorneys representing both parties. At the charge conference, the court advised the attorneys as to how and what it was going to instruct the jury on the issue of PACA and dumping. Defendant objected to the proposed instruction on PACA's requirements, and his objection was denied. After the jury was instructed, the trial court asked both parties, outside the presence of the jury, if either of them had any objections or requests for additional instructions. Neither party objected to the instructions as they were given.

" 'Rule 10(b)(2) of our Rules of Appellate Procedure requiring objection to the charge before the jury retires is mandatory and not merely directory.' " *Wachovia Bank v. Guthrie*, 67 N.C. App. 622, 626, 313 S.E.2d 603, 606 (1984) (quoting *State v. Fennell*, 307 N.C. 258, 263, 297 S.E.2d 393, 396 (1982)). "[W]here a party fails to object to jury instructions, 'it is conclusively presumed that the instructions conformed to the issues submitted and were without legal error.' " *Madden v. Carolina Door Controls*, 117 N.C. App. 56, 62, 449 S.E.2d 769, 773 (1994) (quoting *Dailey v. Integon General Ins. Corp.*, 75 N.C. App. 387, 399, 331 S.E.2d 148, 156, *disc. review denied*, 314 N.C. 664, 336 S.E.2d 399 (1985)). On appeal, plaintiff now contends that defendant failed to preserve his right to appeal on the instructions to the jury, as defendant failed to object to the instructions before the jury retired to deliberate. Our Supreme Court has held, and we reiterate, that when a party has objected to proposed jury instructions during a charge conference, and the trial court has considered and denied the request, that the party need not repeat its objections after the jury charge is given. *Wall v. Stout*, 310 N.C. 184, 188-89, 311 S.E.2d 571, 574

(1984). Therefore, by objecting to the proposed instruction on PACA at the charge conference and receiving a ruling on his objection, defendant has properly preserved this issue for appeal.

[2] As defendant has properly preserved its right to appeal on the jury instruction regarding PACA, we review the trial court's instruction to determine whether it was proper. On appeal, this Court reviews a jury charge "contextually and in its entirety," and the charge will be considered "to be sufficient if 'it presents the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed . . . .' " *Bass v. Johnson*, 149 N.C. App. 152, 160, 560 S.E.2d 841, 847 (2002) (quoting *Jones v. Development Co.*, 16 N.C. App. 80, 86-87, 191 S.E.2d 435, 439-40, *cert. denied*, 282 N.C. 304, 192 S.E.2d 194 (1972)). As defendant now asserts there was error in the instruction, defendant "bears the burden of showing that the jury was misled or that the verdict was affected by an omitted instruction." *Id.* (citing *Robinson v. Seaboard System Railroad*, 87 N.C. App. 512, 524, 361 S.E.2d 909, 917 (1987), *disc. review denied*, 321 N.C. 474, 364 S.E.2d 924 (1988)). " 'Under such a standard of review, it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury.' " *Id.* (quoting *Robinson*, 87 N.C. App. at 524, 361 S.E.2d at 917).

The jury instruction to which defendant assigns error consisted of the following:

> COURT: Members of the jury, it is unlawful for any broker to discard, dump, or destroy, without reasonable cause, any perishable agricultural commodity received by such broker in interstate commerce. Reasonable cause for destroying any produce exists when it has no commercial value.
>
> A clear and complete record shall be maintained showing justification for dumping of produce received on consignment if any portion of such produce cannot be sold due to poor condition.
>
> In addition to the foregoing, if five percent or more of a shipment is dumped, an official certificate or other adequate evidence shall be obtained to prove the produce is actually without commercial value, unless there is a specific agreement to the contrary between the parties.

The language used in the trial court's instruction was taken directly from PACA regulations found at 7 U.S.C. § 499b(3) (2005), 7 C.F.R. 46.22 (2005), and 7 C.F.R. 46.23 (2005). At trial, defendant testified that he was required to abide by the regulations and requirements of PACA, and that he was a licensed and bonded broker. During the charge conference, the trial court stated that it recognized that the requirements of PACA essentially were accounting procedures, however, the trial court confirmed that defendant still had obligations to plaintiff through PACA in that 7 U.S.C. § 499e of PACA states that "[i]f any broker violates any provision of section 2 [of 7 U.S.C. § 499b regarding unfair conduct and unreasonable rejection of the perishable agricultural commodity], he shall be liable to the person thereby injured for the full amount of damages." *See* 7 U.S.C. § 499b(a) (2005). Based on this section of PACA, the trial court determined that the jury was entitled to be instructed on defendant's obligations under the federal law.

In reviewing the jury instruction in its entirety, we can see that the trial court instructed the jury fully and completely on defendant's obligations to plaintiff under both the federal law and the oral contract between the parties. The trial court instructed the jury not only on the requirements of PACA, but also on the issues of course of performance and course of dealings between the parties. The court instructed the jury that the parties had stipulated to the fact that an oral contract existed between the parties, and the court also fully instructed the jury regarding what constitutes a breach of a contract. It was therefore properly left to the jury to determine whether defendant satisfied its contractual duties with plaintiff.

Therefore, we hold the trial court's instruction on the requirements of PACA, when considered in the context of the entire jury charge, did not serve to mislead the jury, and was a proper explanation of the applicable law. There was sufficient evidence presented to support the jury's finding that defendant breached its contract with plaintiff, and thus the trial court's instruction did not adversely affect the jury's verdict or mislead the jury.

[3] Defendant next contends the trial court erred in denying defendant's motion for directed verdict on plaintiff's breach of contract claim.

On appeal, the standard of review on a motion for directed verdict "is whether, 'upon examination of all the evidence in the light most favorable to the nonmoving party, and that party being given the

benefit of every reasonable inference drawn therefrom, the evidence is sufficient to be submitted to the jury.' " *Stamm v. Salomon*, 144 N.C. App. 672, 679, 551 S.E.2d 152, 157 (2001) (quoting *Fulk v. Piedmont Music Ctr.*, 138 N.C. App. 425, 429, 531 S.E.2d 476, 479 (2000)). "The party moving for a directed verdict bears a heavy burden in North Carolina." *Edwards v. West*, 128 N.C. App. 570, 573, 495 S.E.2d 920, 923 (1998). A motion for directed verdict should be denied where " 'there is more than a scintilla of evidence supporting each element of the plaintiff's case.' " *Stamm*, 144 N.C. App. at 679, 551 S.E.2d at 157 (quoting *Little v. Matthewson*, 114 N.C. App. 562, 565, 442 S.E.2d 567, 569 (1994), *aff'd*, 340 N.C. 102, 455 S.E.2d 160 (1995)). In addition, when the decision to grant a motion for directed verdict "is a close one, the better practice is for the trial judge to reserve his decision on the motion and submit the case to the jury." *Edwards*, 128 N.C. App. at 573, 495 S.E.2d at 923.

In the instant case, plaintiff does not contend defendant breached the contract by failing to pack and sell all of plaintiff's sweet potatoes. Instead, plaintiff's breach of contract claim is based upon defendant's failure to notify and account to plaintiff prior to dumping plaintiff's entire sweet potato crop, and denying plaintiff the opportunity to retrieve his crop and mitigate his damages.

Viewing the evidence in a light most favorable to the plaintiff, we hold there was sufficient evidence to take plaintiff's breach of contract claim to the jury. The testimony and evidence presented at trial showed that plaintiff delivered three thousand three hundred (3,300) bushels of sweet potatoes to defendant, which both parties agreed were unmarketable. Plaintiff also delivered an additional ten thousand two hundred (10,200) bushels which plaintiff testified were marketable at the time of delivery to defendant. These ten thousand two hundred bushels were dumped by defendant, without notice or an accounting to plaintiff prior to the dumping. Both plaintiff and Ted Burch, supervisor of defendant's warehouse and packing process, testified concerning the oral agreement between the parties. Both testified that the oral agreement was that defendant would provide storage for plaintiff's sweet potato crop, and would pack and sell the potatoes that were of marketable quality. Both parties also testified that the standard procedure in the industry was that a pack house, such as defendant, would notify the farmer if there was something wrong with their produce, giving the farmer the opportunity to come and retrieve his produce before it was dumped. Both parties also testified that in their past course of dealing, defendant would dump

## WILSON v. BURCH FARMS, INC.

[176 N.C. App. 629 (2006)]

plaintiff's unmarketable produce without first notifying plaintiff and with plaintiff's consent. However, never before had defendant had to dump plaintiff's entire sweet potato crop. There was conflicting testimony from plaintiff's and defendant's witnesses regarding the quality of plaintiff's sweet potatoes at the time they were delivered to defendant's storage facilities.

The evidence presented by both parties creates an issue of fact concerning the terms of the parties' contract and the marketability of plaintiff's crop, which are questions properly left for the jury to determine. *See Goeckel v. Stokely*, 236 N.C. 604, 607, 73 S.E.2d 618, 620 (1952) (issues of fact concerning terms of a contract are for the jury to consider). Any conflicts in the evidence should be "resolved in plaintiff's favor, and he 'must be given the benefit of every inference reasonably to be drawn in his favor.'" *Arndt v. First Union Nat'l Bank*, 170 N.C. App. 518, 523, 613 S.E.2d 274, 278 (2005) (citation omitted). As there is more than a scintilla of evidence that under the parties' agreement defendant had a duty to notify plaintiff prior to dumping his crop and that a breach of contract occurred, this issue was properly submitted to the jury for resolution of the conflicts. Thus, the trial court acted properly in denying defendant's motion for directed verdict on plaintiff's breach of contract claim, and this assignment of error is overruled.

[4] In his final assignment of error, defendant contends the trial court erred in failing to credit defendant with the entire amount of the quality loss/disaster proceeds recovered by plaintiff. We do not reach the merits of defendant's arguments, as defendant has failed to comply with the North Carolina Rules of Appellate Procedure. Therefore we dismiss defendant's final assignment of error.

The Rules of Appellate Procedure are mandatory, and "must be consistently applied; otherwise, the Rules become meaningless, and an appellee is left without notice of the basis upon which an appellate court might rule." *Viar v. N.C. DOT*, 359 N.C. 400, 402, 610 S.E.2d 360, 361, *reh'g denied*, 359 N.C. 643, 617 S.E.2d 662 (2005). " '[F]ailure to follow these rules will subject an appeal to dismissal.'" *Consol. Elec. Distribs., Inc. v. Dorsey*, 170 N.C. App. 684, 686, 613 S.E.2d 518, 520 (2005) (quoting *Steingress v. Steingress*, 350 N.C. 64, 65, 511 S.E.2d 298, 299 (1999)).

Rule 28(b)(6) of our Rules of Appellate Procedure, as written at the time defendant submitted its brief to this Court, required an appellant's brief to contain an argument section that included:

the contentions of the appellant with respect to each question presented. Each question shall be separately stated. Immediately following each question shall be a reference to the assignments of error pertinent to the question, identified by their numbers and by the pages at which they appear in the printed record on appeal. *Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned.*

*The body of the argument shall contain citations of the authorities upon which the appellant relies.*

N.C. R. App. P. 28(b)(6), 2005 Ann. R. (N.C.) 175, 303 (emphasis added). In the argument section of defendant's brief are set forth three questions for our review. However, the body of defendant's final argument fails to "contain citations of the authorities upon which the appellant relies." *Id.* Defendant fails to cite to any statutory or case law authority in support of its argument that the trial court should have credited it with the full amount of plaintiff's quality/loss disaster proceeds. Therefore, as defendant has failed to cite any legal authority to support its argument, this assignment of error is deemed abandoned.

[5] In plaintiff's cross-appeal, he first argues the trial court erred in allowing defendant a set-off against the jury verdict for a portion of the proceeds which plaintiff received under the USDA 2000 Quality Loss Program. Plaintiff contends the collateral source rule should have prohibited evidence of this payment, and that this rule should have prevented the set-off. Defendant contends the trial court acted properly, in that had defendant not been granted a set-off, plaintiff would have double recovered for his lost crop.

The trial court granted defendant a set-off against plaintiff's judgment in the amount of eighteen thousand, one hundred eighty one dollars and eight cents ($18,181.08), plus interest, for a total set-off of twenty one thousand, six hundred fifteen dollars and thirty cents ($21,615.30).

The purpose of the collateral source rule is to " 'exclude[] evidence of payments made to the plaintiff by sources other than the defendant when this evidence is offered for the purpose of diminishing the defendant tortfeasor's liability to the injured plaintiff.' " *Kaminsky v. Sebile*, 140 N.C. App. 71, 77, 535 S.E.2d 109, 113 (2000) (quoting *Badgett v. Davis*, 104 N.C. App. 760, 764, 411 S.E.2d 200, 203 (1991)). "The policy behind the rule is to prevent a tortfeasor from

'reduc[ing] his own liability for damages by the amount of compensation the injured party receives from an independent source.'" *Id.* (quoting *Fisher v. Thompson,* 50 N.C. App. 724, 731, 275 S.E.2d 507, 513 (1981)). This rule is punitive in nature, and is intended to prevent the tortfeasor from a windfall when a portion of the plaintiff's damages have been paid by a collateral source. In this State, and many others, the collateral source rule typically is applied only in actions arising under tort law.

Plaintiff's compensation through the Quality Loss Program was for the damage done to his crop and his lost yield, as a result of the drought, while his claim against defendant was for the destruction of his potatoes. The USDA Quality Loss Program was enacted with the purpose of compensating farmers who suffered yield or quality loss due to weather-related disasters. Since the USDA payments and the jury's verdict were compensation for different losses suffered by plaintiff, we hold the collateral source rule is inapplicable in the instant case, and the trial court should not have allowed a set-off from the damages plaintiff was awarded. The payment plaintiff received from the Quality Loss Program compensated plaintiff for an entirely different loss.

Plaintiff alleged defendant dumped plaintiff's sweet potatoes without notifying him, in breach of their contract. After hearing evidence, over plaintiff's objection, of the Quality Loss payment to plaintiff, the jury agreed that defendant breached the contract and awarded plaintiff fifty thousand dollars ($50,000.00). As the compensation provided to plaintiff under the Quality Loss Program was compensation for a different loss than that found by the jury, we hold the trial court erred when it granted defendant a set-off for the compensation plaintiff received from the USDA Quality Loss Program. Our holding in the instant case is limited to the unique facts presented by this case, and therefore we decline to address the issue of whether the collateral source rule should apply generally to a breach of contract situation.

[6] Finally, plaintiff contends the trial court erred in granting defendant's motion for directed verdict and dismissing plaintiff's bailment claim.

Our Supreme Court has held that

[t]he standard of review for a motion for directed verdict is whether the evidence, considered in a light most favorable to the non-moving party, is sufficient to be submitted to the jury. A

motion for directed verdict should be denied if more than a scintilla of evidence supports each element of the non-moving party's claim. [An appellate court] reviews a trial court's grant of a motion for directed verdict *de novo*.

*Herring v. Food Lion, Inc.*, 175 N.C. App. 22, 26, 623 S.E.2d 281, 284 (2005) (internal citations omitted). When a defendant has moved for a directed verdict on one of the plaintiff's claims,

plaintiff's evidence must be taken as true and viewed in the light most favorable to the plaintiff. . . . This question should not be resolved against the plaintiff unless it appears, as a matter of law, that the plaintiff cannot recover upon any view of the facts that the evidence reasonably tends to establish.

*U.S. Helicopters, Inc. v. Black*, 318 N.C. 268, 270, 347 S.E.2d 431, 432 (1986) (internal citations omitted).

" 'A bailment is created when a third person accepts the sole custody of some property given from another.' " *Barnes v. Erie Ins. Exch.*, 156 N.C. App. 270, 273, 576 S.E.2d 681, 683 (2003) (quoting *Bramlett v. Overnite Transport*, 102 N.C. App. 77, 82, 401 S.E.2d 410, 413 (1991)). The possession of the property by the bailee must be such that it is to the exclusion of the owner and all other persons, and that the bailee has complete control of the property. *Electric Co. v. Dennis*, 255 N.C. 64, 72, 120 S.E.2d 533, 539 (1961). The burden of establishing that a bailor-bailee relationship in fact exists rests with the bailor. *Barnes*, 156 N.C. App. at 273, 576 S.E.2d at 683. "When a bailment is created for the benefit of both the bailor and bailee, the bailee is required to exercise ordinary care to protect the subject of the bailment from negligent loss, damage, or destruction." *Id.* at 273-74, 576 S.E.2d at 683-84 (citing *Strang v. Hollowell*, 97 N.C. App. 316, 387 S.E.2d 664 (1990)). " 'A *prima facie* case of actionable negligence . . . is made when the bailor offers evidence tending to show or it is admitted that the property was delivered to the bailee; that the bailee accepted it and thereafter had possession and control of it; and that the bailee failed to return the property or returned it in a damaged condition.' " *Id.* at 274, 576 S.E.2d at 684 (quoting *McKissick v. Jewelers, Inc.*, 41 N.C. App. 152, 155, 254 S.E.2d 211, 213 (1979)).

Plaintiff contends that a bailment relationship existed between the parties by virtue of their oral agreement. Plaintiff argues that he delivered his crop of sweet potatoes to defendant, who then took

## WILSON v. BURCH FARMS, INC.

[176 N.C. App. 629 (2006)]

exclusive possession and control over the crop, and defendant was then obligated to provide plaintiff with an accounting for the potatoes. Plaintiff argues that defendant was negligent in failing to notify plaintiff prior to dumping the sweet potatoes, and in failing to allow plaintiff an opportunity to mitigate his damages. We agree. We hold the trial court erred in granting defendant's motion for directed verdict on the bailment claim, at the close of plaintiff's evidence.

The evidence presented during plaintiff's case in chief indicated that plaintiff was free to come and look at the potatoes and to remove them from defendant's storage facilities. At no point was plaintiff notified prior to defendant's total disposal of his bailed property, and plaintiff was not provided with an opportunity to retrieve his potatoes before they were dumped. Further, defendant failed to provide plaintiff with any accounting for the potatoes it held for plaintiff.

Defendant does not dispute the fact that it disposed of plaintiff's potatoes without providing plaintiff prior notice, and it does not dispute the fact that it failed to provide plaintiff with an accounting. However, defendant contends that the arrangement between the parties could not have been a bailment, as plaintiff did not expect to have the specific property of the bailment, the sweet potatoes, returned to him. Defendant contends that plaintiff expected an accounting of the sweet potatoes, or the proceeds from their sale, and thus the specific property was not to be returned to plaintiff. Defendant argues that for a bailment to exist, the specific property that is the subject of the bailment must be returned to the bailor. *See, Perry v. R.R.*, 171 N.C. 158, 164, 88 S.E. 156, 160 (1916) ("the obligation to redeliver or deliver over the property at the termination of the bailment on demand is an essential part of every bailment contract."). Defendant's argument that the relationship between the parties could not have been that of a bailment is misguided.

A consignment exists where an consignor leaves his property with a consignee who is "substantially engaged in selling the goods of others," and will work to sell the goods on behalf of the consignor. After selling the goods, the consignee must account to the consignor with the proceeds from the sale. *See, Nasco Equipment Co. v. Mason*, 291 N.C. 145, 154, 229 S.E.2d 278, 285 (1976). While the consignee may or may not receive the specific property of the consignment back, depending on if it is sold, this Court has recognized that a consignment creates a bailment between the parties. *See, Strang v. Hollowell*, 97 N.C. App. 316, 387 S.E.2d 664 (1990); *see also*, 8 C.J.S. *Bailments*

§ 11, at 384 (2005) ("The rule that where a person receiving property is not bound to return the identical thing received, but may account therefor in money or other property, or thing of value, the transaction is a sale, is not applicable to bailments or consignments for sale. . . . A consignment is a type of bailment where the goods are entrusted for sale . . . ."); *Black's Law Dictionary* 152 (8th ed. 2004) (definition of bailment for sale is "[a] bailment in which the bailee agrees to sell the goods on behalf of the bailor; a consignment."). Thus, where a consignment relationship may have existed between plaintiff and defendant, the relationship was also that of a bailment.

We hold plaintiff has "shown sufficient evidence, taken in the light most favorable to it, to establish the existence of a bailment with defendant as bailee." *U.S. Helicopters, Inc.*, 318 N.C. at 275, 347 S.E.2d at 435. The total loss of plaintiff's crop was due to defendant's dumping of the potatoes without prior notice to plaintiff, after no objections as to marketability were raised at the time of delivery, and defendant assured plaintiff that the potatoes would be processed and graded by defendant.

We therefore hold the trial court erred in dismissing plaintiff's bailment claim, and thus plaintiff is entitled to a new trial on this issue alone.

Reversed and remanded.

Judges TYSON and JOHN concur.